Petition for Writ of Habeas Corpus Granted and Opinion filed August 5,
2003









Petition for Writ of Habeas Corpus Granted and Opinion
filed August 5, 2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00413-CV

____________

 

IN RE ARTHUR BROUSSARD, Relator

 

 



 

ORIGINAL
PROCEEDING

WRIT
OF HABEAS CORPUS

 



 

O P I N I O N

Relator, Arthur Broussard, challenges the trial court=s order of March 18, 2003, finding
relator in contempt, revoking suspension of commitment, and committing relator
to jail.  In six issues, relator asserts
that his due process rights have been violated. 
On April 18, 2003, we issued an order, granting relator=s petition pending final
determination of this cause, and set bond of $500.00.  Relator posted bond and was released from
incarceration.  Because we find the
contempt order void, we grant relator=s petition, order relator
released from the bond set by this Court on April 18, 2003, and order relator
discharged from custody.

History








On February 5, 2002, the trial court found relator in
contempt for failure to pay court-ordered child support arrearages of
$1,551.78, including interest. 
Punishment was assessed at confinement in the county jail for 180 days
and day-to-day thereafter until he purged himself of the contempt by paying the
arrearage, attorney=s fees and court costs. 
Commitment was suspended pursuant to certain listed conditions,
including the requirement that he pay his ongoing child support obligation of
$300.00 per month, payable on the 1st of each month.  

On June 7, 2002, the trial court entered a judgment of
contempt nunc pro tunc, which added the relator=s failure to make certain health
insurance premium reimbursement payments, as additional child support.  The punishment ordered was the same as in the
February 5, 2002, order, but the conditions for suspension of commitment
included a new condition, the requirement that relator pay and continue to pay,
as additional child support, the health insurance premium of $19.00 on the 1st
and 15th of each month.  

On December 31, 2002, a motion for enforcement was
filed.  On March 18, 2003, the trial
court held a hearing on the enforcement motion and issued an order, revoking
suspension of commitment, and holding relator in contempt.  In this order, the trial court found that
relator had failed to comply with prior orders by failing to make child support
payments of $300.00 on February 1, 2002, February 15, 2002, March 1, 2002,
March 15, 2002, and April 1, 2002. 
Accordingly, the trial court committed relator to the county jail for
confinement for a period of 180 days for each violation, with the sentences to
run concurrently.  The trial court also
ruled that relator remain in confinement day to day until relator paid, as
additional child support, attorney=s fees and other fees relating to
commitment.[1]


Failure to Make Bi-Monthly Payments of $300.00 in Child Support








Relator first complains that his due process rights were
violated when he was incarcerated for allegedly failing to timely pay $300.00
bi-monthly, when the divorce decree did not require him to make bi-monthly
payments of $300.00.  The March 18, 2003
contempt order (hereinafter Athe contempt order@) found that relator had failed to
comply with prior orders by failing to make child support payments of $300.00
on February 1, 2002, February 15, 2002, March 1, 2002, March 15, 2002, and
April 1, 2002.  The Divorce Decree,
however, only required relator to pay $300.00 per month, payable on the 1st of
each month.  

An original habeas corpus proceeding is a collateral attack
on a contempt judgment.  Ex parte
Rohleder, 424 S.W.2d 891, 892 (Tex. 1967). 
The purpose of a writ of habeas corpus is not to determine the guilt of
the contemnor, but only to determine whether he was afforded due process of law
or if the order of contempt was void.  Ex
parte Gordon, 584 S.W.2d 686, 688 (Tex. 1979).  A court will issue a writ of habeas corpus if
the order underlying the contempt is void, Ex parte Shaffer, 649 S.W.2d
300, 302 (Tex. 1983), or if the contempt order itself is void.  Gordon, 584 S.W.2d at 688.  An order is void if it is beyond the power of
the court to enter it, or if it deprives the relator of liberty without due
process of law.  Ex parte Barlow, 899
S.W.2d 792, 794 (Tex. App.CHouston [14th Dist.] 1995, orig. proceeding).

Section 157.166 of the Family Code sets out the required
contents of a child support enforcement order. 
Tex. Fam. Code Ann. ' 157.166 (Vernon 2002).  The enforcement order must include, among
other things, the provisions of the order for which enforcement was requested
and the acts or omissions that are the subject of the order.  Id. at (a).  Here, the trial court set out the provisions
correctly, but when stating relator=s omissions, it found violations of
requirements not found in any prior order. 
The trial court found relator in contempt for failing to make payments
of $300.00 on February 1, 2002, February 15, 2002, March 1, 2002, March 15,
2002, and April 1, 2002.  The Divorce
Decree ordered relator to make child support payments of $300.00 per month,
payable in one installment on the 1st of each month.   Because no underlying order required relator
to make payments of $300.00 on the 15th of the month in addition to $300.00
payments on the 1st of the month, relator should not be the subject of contempt
proceedings for failing to make the February 15th and March 15th payments of
$300.00.   Thus, the portion of the
contempt order holding relator in contempt for failing to make $300.00 payments
on February 15th and March 15th is void.








Real party in interest counters that the trial court=s intent was to find relator in
contempt for failing to make five bi-monthly payments of the health insurance
premiums.  The Divorce Decree did impose
on relator the additional child support obligation of paying health insurance
premiums of $19.00 bi-monthly.  Thus,
real party concedes that it was error for the trial court to hold relator in
contempt for failing to pay $300.00 on February 15th and March 15th.  Real party argues that, because the contempt
order assesses separate sentences for each violation, only the erroneous
violations are void and not the entire order. 
Real party asserts that we have authority to reform the order by
severing the two erroneous violations, those for February 15, 2002 and the
March 15, 2002, while retaining the otherwise valid commitment order.

We agree with real party that, if a severable portion of the
contempt or commitment order is void, an appellate court may strike the
offending portion and deny relief as to the valid portion of the order.  See Ex parte Roosth, 881 S.W.2d 300,
301 (Tex. 1994)(severing provision barring good behavior credit and denying
relief as to remainder of order); Ex parte Linder, 783 S.W.2d 754, 758
(Tex. App.BDallas 1990, orig.
proceeding)(severing portion of contempt judgment confining relator for failure
to pay December 15, 1980 payment as there was no order requiring that payment,
and denying leave as to remainder of contempt judgment).  If this were the only error rendering the
contempt order void, the court could merely strike the references to the
failure to pay $300.00 on February 15th and March 15th.  Because in subsequent sections of this
opinion we find the order void on other grounds, we decline real party=s request that we strike the
references to February 15, 2003 and March 15, 2003.  

Untimely Payment of Health Insurance Premium








In his second issue, relator argues his due process rights
were violated when he was incarcerated for allegedly making untimely payments
for health insurance premiums ordered as child support of $38.00 because both
relator and real party were ordered to pay this amount under the terms of the
divorce decree.  Relator claims the
divorce decree is ambiguous because it orders both relator and real party to
provide payments for health insurance as child support.  Because he claims this portion of the decree
is ambiguous, relator asserts it cannot be enforced by contempt.

The provisions for payment of health insurance premiums are
set out in Exhibit A to the divorce decree. 
In this exhibit, the trial court orders real party to maintain the child
as a dependent on real party=s health insurance plan and orders that relator Apay to [real party] the cost of
insuring the child on [real party=s] health insurance plan in the
amount of $19.00 which is to paid along with the child support payment
beginning with the first $19.00 payment due on July 1, 2000, the second $19.00
payment due on July 15, 2000, and thereafter in payments of $19.00 due on the
first day of the month and a like payment of $19.00 on the fifteenth day of
each and every month . . . .@  Real party is ordered
to make like payments to relator only if the health insurance for the children
is converted to relator=s health insurance. 
Accordingly, we find the decree unambiguous regarding relator=s health insurance premium
reimbursements.  We overrule relator=s second issue. 

Judgment Nunc Pro Tunc

In his third issue, relator claims his due process rights
were violated when he was committed for failure to comply with an order nunc
pro tunc signed after the trial court lost plenary power and which increased
relator=s punishment.  In response, real party asserts that the nunc
pro tunc judgment merely corrected a clerical error and that relator waived any
complaint about this order because he approved the order as to form and substance.








Turning first to the waiver claim, real party cites as
support the cases of Ex parte Crawford, 684 S.W.2d 124 (Tex. App.BHouston [14th Dist.] 1984, orig.
proceeding) and Cisneros v. Cisneros, 787 S.W.2d 550 (Tex. App.BEl Paso 1990, orig. proceeding).  The El Paso court has held that approval of a
judgment as to substance waives any complaint about that judgment.  787 S.W.2d at 552.  In Crawford, there was no approval as
to substance by the parties, but both parties stated in their briefs that the
child support order was an Aagreed@ order. 684 S.W.2d at 127. 
Accordingly, this court held that any complaint about the order was
waived.  Id.  We find Crawford distinguishable
because the parties here do not refer to the judgment nunc pro tunc as an
agreed judgment.

In a subsequent case, this court has specifically held that,
while a party=s consent to a judgment can waive
error, the consent must be explicit and unmistakeable, and approval as to form
and substance, standing alone, does not transform a judgment into a consent
judgment.  Chang v. Linh Nguyen,
81 S.W.3d 314, 316 n. 1 (Tex. App.BHouston [14th Dist.] 2001, no
pet.).  In Chang, the parties= attorneys had approved the judgment
as to form and substance, but this court found that counsels= approval of the judgment, without
more in the record to show the judgment was a consent judgment, did not result
in waiver of Chang=s appeal.  Id.  Thus, we hold relator=s approval of the nunc pro tunc
judgment did not result in waiver of relator=s right to complain about this
judgment.

The Rules of Civil Procedure provide for entry of a corrected
judgment, or a nunc pro tunc judgment, after expiration of a court=s plenary power.  Tex.
R. Civ. P. 306a(6).  The purpose
of a judgment nunc pro tunc is to correct a clerical error in the judgment
after the court=s plenary power has expired. 
Ferguson v. Naylor, 860 S.W.2d 123, 126 (Tex. App.BAmarillo 1993, writ denied).  To be clerical in nature, the error must be
one that is not the result of judicial reasoning, evidence, or
determination.  Andrews v. Koch,
702 S.W.2d 584, 585 (Tex.1986).  The
question whether an error is clerical or judicial is a question of law.  Dickens v. Willis, 957 S.W.2d 657, 659
(Tex. App.BAustin 1997, no pet.).  When deciding whether a correction is a
judicial or a clerical error, we look to the judgment actually rendered.  Escobar v. Escobar, 711 S.W.2d 230,
231 (Tex. 1986).  The court can only
correct the entry of a final written judgment that incorrectly states the
judgment actually rendered.  Id.
at 231-32.  Even if the court renders
judgment incorrectly, it cannot alter a written judgment that precisely
reflects the incorrect rendition.  Id.
at 232.  A judgment nunc pro tunc should
be granted if the evidence is clear and convincing that a clerical error was
made.  Riner v. Briargrove Park Prop.
Owners, Inc., 976 S.W.2d 680, 683 (Tex. App.BHouston [1st Dist.] 1997, no writ); Stuart
v. City of Houston, 419 S.W.2d 702, 703 (Tex. Civ. App.BHouston [14th Dist.] 1967, writ ref=d n.r.e.). 








Typical clerical changes to judgments that have been upheld
include corrections of the date of judgment, Nolan v. Bettis, 562 S.W.2d
520, 523 (Tex. Civ. App.BAustin 1978, no writ), correction of a party name, Carlyle
Real Estate Ltd Partnership-X v. Leibman, 782 S.W.2d 230, 233 (Tex. App.BHouston [1st Dist.] 1989, no
writ),and correction of a numerical error, Escobar v. Escobar, 711
S.W.2d 230, 232 (Tex. 1986).  Other
clerical changes have been upheld where the record clearly showed the change
was to the judgment entered, not the judgment rendered.  See, e.g., Jenkins v. Jenkins, 16
S.W.3d 473, 482 (Tex. App.BEl Paso 2000, no pet.) (record of hearing clearly showed
trial court rendered judgment that mother was ordered to maintain child=s residence at a specified address,
rather than the judgment entered, which merely stated the mother had the right
to establish the child=s residence anywhere within the county).     

Because the obligation to pay $38.00 in health insurance
premium reimbursement was not mentioned in the original judgment of contempt,
the trial court rendered the nunc pro tunc judgment, noting relator=s obligation to pay $38.00 per month
for health care reimbursement.  The nunc
pro tunc also included this obligation as a condition for suspension of
commitment, additional to those in the original judgment of contempt.  This is much more of a substantive change
than correction of a name or date.  Real
party argues that the addition is merely clerical, but real party presents no
proof of this assertion other than to argue that the obligation to pay the
health insurance premium was a continuing one because it had been ordered in
the Decree of Divorce.  Absent any record
showing that the language of the original judgment of contempt did not conform
to the judgment actually rendered, we cannot conclude that the addition of
another child support obligation as a condition of probation is merely a
clerical error.  Because the judgment
nunc pro tunc did not merely correct a clerical error, but rather imposed a new
obligation on relator, we hold that it was issued outside the trial court=s plenary power and is void.  Thus, to the extent the findings of contempt
in the contempt order are based on a violation of any conditions in the
judgment of contempt nunc pro tunc, the contempt order is void.

Lack of Notice
of Noncompliance 








Relator next complains that his due process rights were
violated when notice of alleged noncompliance was not included in the motion
for contempt.  The motion for enforcement
charges relator Aas set out in Exhibit >A=,@ but relator complains that Exhibit
A, which is a chart, fails to fully state the manner of relator=s alleged noncompliance as required
by Ex parte Edgerly, 441 S.W.2d 514 (Tex. 1969) and section
157.002(a)(2) of the Family Code. 
Although the chart lists all payments made and all dates payments were
made, relator claims the chart does not show which payments relator did not
make or how relator is in noncompliance.

Real party claims relator waived this complaint by failing to
file special exceptions or otherwise object to lack of notice.  In support of this claim, real party cites Ex
parte Occhipenti, 796 S.W.2d 805 (Tex. App.BHouston [1st Dist.] 1990, orig.
proceeding) and Ex parte Blackmon, 529 S.W.2d 570 (Tex. App.BHouston [1st Dist.] 1975, orig.
proceeding).  This court explicitly
disagreed with the holdings in these cases and the authority upon which they
rely in Ex parte Barlow, 899 S.W.2d 791, 796 (Tex. App.BHouston [14th Dist.] 1995, orig.
proceeding).  In addition to finding that
Occhipenti and Blackmon convert an incorrect assumption into law,
we found that the holding in these cases conflicts with the traditional due
process protections afforded in contempt proceedings.  899 S.W.2d at 797.  Accordingly, this court held that failure to
file special exceptions did not result in waiver of the notice required.  Id. at 798.








Due process of law demands that before a court may punish for
constructive contempt, or contempt not committed in the court=s presence, the accused must be given
full and complete notice of the subject matter and of Awhen, how, and by what means the
defendant has been guilty of the alleged contempt.@ 
Edgerly, 441 S.W.2d at 516. 
See also Barlow, 899 S.W.2d at 795.  Here, relator received the motion for
enforcement that requested a finding of contempt and revocation of suspension
of commitment.  The motion alleged that relator
had violated prior orders of the court by failing to make child support and
arrearage payments timely, as set out in Exhibit AA@ to the motion.  Exhibit AA@ is a printout of dates payments were
due, the amount of payments due on each date, the amount paid on the date due,
and the amounts actually paid, whether on the date the payment was due or on
another date.  Included in this printout
are the dates and payments for which relator was held in contempt.  Although Exhibit A shows when relator made
payments, Exhibit A also shows whether those payments were timely.  We find that Exhibit AA@ to the motion for enforcement
provided relator with sufficient notice of any allegations of failures to
timely make payments of child support.  

Ambiguity of Child Support Orders

Relator next complains that his due process rights were
violated because the trial court found him guilty for untimely paying child
support, notwithstanding the fact that the court=s previous order included inconsistent
and ambiguous requirements regarding payment. 
Relator claims he was subject to three different orders with different
payment amounts and payment due dates and that these orders created an
ambiguity as to the terms and obligations imposed on him, thereby rendering the
orders void and unenforceable.  

A contempt order must be based on one=s Adisobedience of an order that spells
out >the details of compliance in clear,
specific and unambiguous terms so that such person will readily know exactly
what duties or obligations are imposed upon him=.@ 
Ex parte Padron, 565 S.W.2d 921, 921 (Tex. 1978).  To sentence a person to confinement for
disobedience of a prior order, such prior order A>must carry with it no uncertainty,
and must not be susceptible of different meanings or constructions, but must be
in the form of a command, and when tested by itself, must speak definitely the
meaning and purpose of the court in ordering=.@ 
Ex parte Slavin, 412 S.W.2d 43, 45 (Tex. 1967)(quoting Ex
parte Duncan, 42 Tex. Crim. 661, 62 S.W. 758 (1901)).

The three orders to which relator refers are the Divorce
Decree, the Wage Withholding Order, and the First Amended Wage Withholding
Order.  The Divorce Decree required
relator to pay $300.00 in child support on the 1st of each month and to pay
$19.00 in additional child support (for health insurance premiums) on the 1st
and 15th of each month.  








When the trial court signed the decree, she also signed the
first wage withholding order.  This wage
withholding order ordered relator=s employer to withhold the following
amounts from relator=s earnings:

$300.00          if Obligor is PAID MONTHLY:

$300.00 on current support,

$150.00          $150.00 if Obligor is PAID TWICE MONTHLY:

$150.00 on current support,

$138.46          $138.46 if Obligor is PAID EVERY OTHER WEEK:

$138.46 on current support

$69.23            $69.23 if Obligor is PAID EVERY WEEK:

$69.23 on current support.

This order also states the maximum amount to be withheld shall not exceed
50 pecent of relator=s disposable earnings.

Because the original wage withholding order failed to include
the obligation to pay health insurance premiums, the trial court subsequently
signed a First Amended Order of Withholding from Earnings for Child Support
Nunc Pro Tunc on June 7, 2002, which ordered relator=s employer to withhold the following
amounts from relator=s earnings:

1.  $338.00    if the OBLIGOR is paid monthly, which includes $300.00 forcurrent
child support, plus $38.00 for health insurance premium reimbursement.

2  $169.00     if the OBLIGOR is paid twice monthly, which includes $150.00 for
current child support, plus $19.00 for health insurance premium reimbursement.

3.  $156.00    if the OBLIGOR is paid every other week, which includes $138.45
for current child support, plus $17.45 for health insurance premium
reimbursement.

4.  $78.00       if the OBLIGOR is paid weekly, which includes $69.23 for
current child support, plus $8.77 for health insurance premium reimbursement.








This order also states the maximum amount to be withheld shall not exceed
50 pecent of relator=s disposable earnings.

Relator claims that payment in accordance with either of the
wage withholding orders results in technical noncompliance with the Divorce
Decree because the payments are paid in different amounts and on different
dates, based on when relator is paid by his employer.  The printout attached to the motion for
enforcement reflects that relator made payments twice a month, similar to that
provided in the wage withholding orders, in the months for which he was found
in contempt. 

Real party counters that relator=s only obligations arise from the
Divorce Decree and the subsequent judgments of contempt.  Real party claims the withholding orders do
not obligate relator to pay anything and, therefore, they do not change the
dates or amount of support due.  

Generally, an employer=s withholding order is not intended
to replace the initial child support ordered by the court, nor to affect the
amount ordered or change the due dates.  Ex
parte Christensen, 868 S.W.2d 376, 379 (Tex. App.BHouston [1st Dist.] 1993, orig.
proceeding).  In Christensen, the
First Court of Appeals addressed the issue whether the due dates and amounts
due under a divorce decree are modified by a wage withholder order.  In Christensen, the decree set out Athe required withholding provisions@ and the wage withholding order was
filed with and incorporated into the decree. 
Id.  The Christensen
decree also stated that the relator=s child support obligations were Asubject to the provisions for
withholding from earnings for child support specified below . . . .@ 
Because the decree provided for a request for wage withholding and
service upon the employer, the court held that the date of service of the
withholding order on the employer was crucial in determining whether the
withholding order was effective to alter the due dates for payment of child
support.  Id.  Because the record in Christensen did
not establish the date of service of the withholding order on the obligor=s employer, the court held that the
child support obligation in the decree was not superseded by the withholding
order provisions.  Id.








The decree in this case states that a wage withholding order
was signed, but the withholding order was not incorporated into the
decree.  Moreover, there is no statement
in the decree that the child support obligations may, upon compliance with the
requirements for request and service of a withholding order, become subject to
a withholding order.  The decree includes
provisions for requesting wage withholding and service of the order on the
obligor=s employer.  Thus, unlike the decree in Christensen,
the decree in this case does not, on its face, allow for modification of the
decree provisions for the amount and date of payment of child support by a wage
withholding order.[2]









Even if the decree was subject to the withholding order, it
is unclear from the record here, as it was in Christensen, whether
relator=s employer was served with the wage
withholding order and whether relator=s bi-monthly payments in February,
March, and April 2002, were made by relator=s employer pursuant to a wage
withholding order.  Relator testified
that he thought the withholding order was served in March and that his employer
made payments pursuant to the withholding order.  The printout attached to the enforcement
motion reflects that relator made twice-monthly payments in February, March,
and April 2002, the months for which he was held in contempt.  These payments, however, were not made on the
first of the month, as required by the decree. 
Accordingly, the trial court did not hold relator in contempt for
nonpayment, but for failure to make timely payments.  This is confirmed by the fact that the
contempt order form, which provided blanks for inclusion of the dates of
nonpayment, and stated that relator was held in contempt for his failure to
pay, included a handwritten interlineation to reflect that relator was held in
contempt for his failure to timely pay. 
Furthermore, relator=s civil contempt punishment is not tied to relator=s payment of any arrearage, but
requires his continued incarceration until he pays attorney=s fees of real party=s counsel, and other fees and
costs.  Both parties admit, and the
contempt order reflects, that relator is not currently in arrears on his child
support obligations.

In any event, the lack of evidence in the record showing that
the wage withholding order had been served on relator=s employer prevents us from reaching
the issue whether the provisions of the wage withholding order superseded the
due dates for payment of child support in the decree.  Accordingly, we must find that relator=s obligation for child support payments
and the deadlines for these payments continued to arise from the divorce
decree.  We overrule relator=s fifth issue.

Commitment until AFurther Order of the Court@

In his final issue, relator claims his due process rights
were violated when the contempt and commitment order ambiguously specifies that
he is to remain in jail for 180 days, served in 48-hour increments, until Afurther order of this Court.@ 
The contempt order provides for punishment of 180 days in jail for each
violation, with these sentences to be served concurrently, and then day-to-day
until relator pays $855.24 in attorney=s fees and costs, and pays a total of
$83.00 in fees.  The order further states
that relator=s sentence shall be served as set out
in Exhibit AA.@ 
Attached to the order is Exhibit AA,@ which states in pertinent part:

IT IS FURTHER ORDERED that said sentence shall be
served in forty eight hour increments on weekends beginning at 7:00 pm. on
Friday and ending at 7:00 p.m. on the following Sunday, with the first such
incremental sentence to begin at 7:00 p.m. on Friday, March 21, 2003 and
end at 7:00 p.m. on Sunday, March 23 2003, and thereafter to begin at
7:00 p.m. on each and every Friday and to end at 7:00 p.m. on the following
Sunday until further order of this Court.








Relator complains that he cannot determine what he must do to
satisfy the court that he has completed his sentence when the trial court
requires commitment Auntil further order of this Court.@ 
Relator claims this language is ambiguous and void as was that in Ex
parte Quevedo, 611 S.W.2d 711 (Tex. Civ. App.BCorpus Christi 1981, orig.
proceeding).  Relator further notes that
the commitment order has no date for release, since release is conditioned by Afurther order of this Court.@

In Quevedo, the order of contempt stated that relator
would not be released until he met the requirement of paying delinquent child
support of $2,250.00, together with $350.00 in attorney=s fees to petitioner=s attorney, and until further
orders of this Court.@  Id. at 712.  The court found that this portion of the
order set out an ambiguous condition for release in that relator could not
determine with clarity to what Afurther orders of this Court@ 
referred.  Id.  Accordingly, the court found this
provision rendered the order void.  Id.
at 713.

Real party argues that Quevedo is distinguishable
because the sentence in that case only assessed civil contempt.  Here, the Auntil further order of this Court@ language relates only to the
criminal contempt portion of relator=s sentence.  Thus, the sentence in this case does not tie
the purging provision to the nebulous Auntil further order of the court@ language.  Because the Auntil further order of the court@ language in this case is tied to the
criminal contempt sentence, which is a finite sentence, real party asserts the
commitment language is clear and unequivocal. 
Even if the Auntil further order of the court@ language does relate to the civil
portion of relator=s sentence, real party claims any argument concerning civil
commitment is premature until relator has served the criminal portion of the
sentence.  

In Ex parte Slavin, 412 S.W.2d 43 (Tex. 1967), the
supreme court stated:

Where the court seeks to punish either by fine,
arrest, or imprisonment for the disobedience of an order or command, such order
or command must carry with it no uncertainty, and must not be susceptible of
different meanings or constructions, but must be in the form of a command and,
when tested by itself, must speak definitely the meaning and purpose of the
court in ordering.

 

Id. at 45
(quoting Ex parte Duncan, 42 Tex. Crim. 661, 62 S.W. 758 (1901)).








The trial court in this case sentenced relator to confinement
for a period of 180 days, but Exhibit A to the contempt order provides for
service of this sentence in forty-eight hour increments on weekends Auntil further order of this Court.@ 
Thus, the two directives are susceptible of different meanings.  Exhibit A can be read to mean that relator
could be held in jail until further order of the court, even if that occurred
after relator had completed serving the full equivalent of 180 days in
jail.  Because the language in the order
and Exhibit A create an uncertainty in the length of relator=s sentence, it is irrelevant whether
the uncertainty is part of the criminal contempt sentence or the civil contempt
sentence.  Despite the fact that Quevedo
concerned a civil contempt sentence, we believe the reasoning is equally
applicable to a criminal contempt sentence and should be extended.  We find that the provision in this case
conditioning release on Afurther order of this Court@ creates an ambiguity that prevents
relator from determining when he may achieve release from incarceration.  Therefore, this provision is void.[3]  Because uncertainty lies with the criminal
and not the civil portion of the contempt sentence, our ruling is not
premature.

Conclusion

We hold that the March 18, 2003, contempt order is void.  Accordingly, we grant relator=s petition for writ of habeas
corpus.  We further order relator
released from the bond set by this Court on April 18, 2003, and order relator
discharged from custody. 

 

/s/            Charles Seymore

Justice

 

Judgment rendered
and Opinion filed August 5, 2003.

Panel consists of
Justices Anderson, Seymore, and Guzman.

 











[1]  During oral argument, counsel for both parties
admitted that relator has paid the fees assessed in the order imposing civil
contempt, and therefore, relator will not have to be incarcerated after
completion of the criminal portion of the contempt order.  





[2]  During oral argument, counsel for real party was asked
whether the failure to incorporate the wage withholding order and specify that
child support obligations could become subject to the withholding order, was
crucial here.  Counsel for real party did
not agree that this omission was crucial and stated that, even if the
withholding order had been incorporated into the decree, it would not have
changed the due dates for relator=s child
support obligations.  This makes little
sense because, if payment pursuant to the provisions of an effective  wage withholding order do not constitute
compliance with the obligor=s child support obligation, an obligor whose employer
pays pursuant to the wage withholding order is in the impossible position of
having paid as provided in the withholding order, but still being technically
in violation of the provisions of the decree. 






[3]  Although the supreme court has held that a void
portion of a contempt order may be struck and the remaining valid portion of
the order upheld, see Ex parte Roosth, 881 S.W.2d 300, 301 (Tex. 1994),
we decline to strike the language in Exhibit A as this court did with this same
language in In re Watson, 2003 WL 21230931 (Tex. App.BHouston [14th Dist.] May 29,2003, orig. proceeding),
because other errors in the order render it void.