**Ex parte Darwin CRAWFORD, Relator.**

**No. C14–84–443CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 15, 1984.

Walter Mahoney, Jr., Houston, for appellant.

Susan Myres, Whitmore, Sheppard & Pollicoff, Houston, for appellee.

Before JUNELL and SEARS, JJ., and T. GILBERT SHARPE, J. (Retired)

## OPINION

JUNELL, Justice.

This is a habeas corpus proceeding. On July 28, 1983, the Honorable Bob Robertson of the 308th Judicial District Court of Harris County held relator, Darwin Crawford, in contempt of court for violating provisions in a divorce decree ordering him to pay child support. The written order of contempt was signed August 3, 1983. Punishment for the contempt was set at 30 days confinement in the county jail. Further confinement was ordered until relator purged himself of contempt by paying the back child support of $1,600, attorney's fees and costs.

Enforcement of the order holding relator in contempt was suspended upon the conditions that relator pay $100 cash to his former wife that day and the $1500 balance, attorney's fees ($375) and costs ($53) by September 7, 1983. All parties were ordered to appear September 8, 1983, for a hearing to determine whether relator had complied with the order. Relator did not appear September 8, 1983. He successfully evaded appearance before the court until he was arrested on a writ of attachment and brought before the court June 28, 1984. On that day the court conducted a hearing and found that the relator had failed to comply with the conditions in the July 28, 1983, contempt order and signed a commitment order under which the relator was held until released on bond pending hearing on this habeas corpus proceeding.

■ Before an appeals court may order the release of a relator in a habeas corpus proceeding, the trial court's order must be void either because it was beyond the power of the court or because it deprived the relator of his liberty without due process of law. *Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex.1980). Relator does not challenge the trial court's jurisdiction. All of his arguments are based on due process.

Relator proposes three reasons that his confinement is illegal: (1) that the divorce order is so vague and ambiguous that it cannot be enforced by contempt, (2) that relator had no notice of the allegations against him at the June 28, 1984, hearing and (3) that the commitment order is void because it does not specify when and how relator violated the order of the court nor for which violation he is being punished. We find that the relator was properly committed to the Harris County jail and deny his application for writ of habeas corpus.

The portion of the March 4, 1983, divorce decree ordering the relator to pay child support contains hand-made deletions and changes. The original typed version ordered payment of $300 per child for a total of $600 a month. The changes were obviously intended to lower the support obligation to $200 per child, for a total of $400

per month. Unfortunately, not all of the figures were corrected so that the decree, as corrected by hand, actually reads,

IT IS DECREED that DARWIN RAY CRAWFORD pay to CONNIE JEAN CRAWFORD child support in the amount of $300.00 per month, per child, for a total of FOUR HUNDRED DOLLARS, ($400.00), monthly, with the first payment of SIX HUNDRED DOLLARS, ($400.00), being due and payable on the 15th of each month, commencing March 15, 1983 and a like payment being due and payable on the same day of each month thereafter until the oldest child reaches the age of 18, or is otherwise emancipated, at which time the payments shall be THREE HUNDRED DOLLARS, ($200.00), per month until the youngest child reaches the age of 18.

The divorce decree recites that relator did not appear or file answer and did wholly default.

The relator cites the rule in *Ex parte Slavin*, 412 S.W.2d 43 (Tex.1967) that a person cannot be held in contempt for failing to follow an order that is ambiguous or susceptible to different meanings or constructions. In *Slavin* the relator was a father who reduced his child support payments after one of his children reached majority. The court was not faced with a relator who completely ignored his obligation to support his children. Even with the carelessly made revisions in the March 4, 1983, decree relator was made aware that he was at least obligated to pay the lesser amount of $400. If he had any doubts as to what was required of him, he could have had the matter cleared up. *See Garza v. Fleming*, 323 S.W.2d 152, 156 (Tex.Civ. App.—San Antonio 1959, writ ref'd n.r.e.).

■ We agree with Justice Reeves's dissenting opinion in *Ex parte Longoria*, 671 S.W.2d 673, 675–76 (Tex.App.—San Antonio 1984, no writ). A relator who knows with certainty he was either to pay X amount or Y amount under an order can be punished for contempt for choosing to ignore the order completely.

■ Further, we hold that the relator has waived his right to complain about any ambiguity in the divorce decree when he agreed to the judgment of contempt rendered July 28, 1983. We do not have before us a statement of facts for any of the court hearings involved, but both parties in their briefs call the July 28, 1983, order an "agreed order." That order finds the relator in arrears in the amount of $1,600. Both the Motion for Contempt for Failure to Pay Child Support and the Order to Show Cause setting the July 28, 1983, hearing allege that relator failed to pay $400 a month for March, April, May and June of 1983. Relator was clearly put on notice that the court was being asked to enforce the March 4, 1983, divorce decree to the extent it ordered payments of $400 per month as child support. There is no indication that relator disputed the court's interpretation of the divorce decree even as late as June 28, 1984, when he was before the court in the delayed compliance hearing. It was only when the relator was finally in jail that he decided that the decree was ambiguous.

■ Relator also argues that he has been denied due process because he had no notice of the allegations against him prior to his "trial for constructive contempt." Apparently, relator is speaking of the June 28, 1984, compliance hearing. It is well settled that imprisonment for contempt without notice and hearing is a denial of due process. *Ex parte Herring*, 438 S.W.2d 801 (Tex.1969). It is equally clear that when a person has been found in contempt for violating a court's previous order, but his punishment is suspended on condition of his compliance with certain terms and conditions, the court must afford him a subsequent hearing to determine whether he breached any of those terms and conditions before he can be committed to jail. *Ex parte Pena*, 636 S.W.2d 741 (Tex.App.—Corpus Christi 1982, no writ).

■ Relator was found in contempt July 28, 1983. That finding was put in writing and signed August 3, 1983. The contempt order itself gave relator sufficient notice of

the compliance hearing when it ordered him to appear September 8, 1983, for a hearing to determine "whether Respondent has complied with this Order." A similar procedure was upheld in *Ex parte Pappas*, 562 S.W.2d 865, 867 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ) and *Ex parte Lee*, 568 S.W.2d 689 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ). The compliance hearing was not held until June 28, 1984, only because the relator himself ignored the court's orders and evaded its processes. The court's docket sheets unveil this scenario leading to the relator's commitment. When relator did not appear for the September 8, 1983, compliance hearing, the court issued a writ of attachment and bond was set at $2,000. Relator was arrested October 25, 1983, and released when a surety posted bond. He was sworn to return December 22, 1983, but again failed to appear. A second writ of attachment was issued but apparently went unserved. A third writ of attachment was issued June 13, 1984, under which relator was arrested and brought before the court June 28, 1984. Finally, the compliance hearing could be held. The court was correct in issuing the writs of attachment and delaying hearing until the relator was present. Such a procedure is mandated in *Ex parte Johnson*, 654 S.W.2d 415 (Tex. 1983).

At submission relator argued that he was never given notice of what allegations he would face at the compliance hearing. The contempt order directed relator to appear September 8, 1983, "at which time it shall be determined whether Respondent has complied with this Order." Directly above this language were the terms and conditions under which enforcement of the contempt order was suspended. Relator was given until September 7, 1983, to comply.

■ It would have been impossible for the court or the movant to delineate for relator the exact allegations that would be considered September 8, 1983, because no one would know until September 7, 1983, whether relator had complied. Relator

clearly had notice of what was required of him to stay out of jail. He chose to ignore that notice and cannot now complain.

Relator's last argument is that the commitment order itself is void because it does not specify when and how relator is found to have violated the order of the court nor for which violation he is being punished.

 A written order of commitment is made for the purpose of enforcing a contempt judgment by directing imprisonment of the contemnor. It is a warrant or order of process by which a court directs a ministerial officer to take a person to jail or to prison and detain him there. A commitment order can be included in the contempt judgment or stand as a separate document. *Ex parte Arapis*, 157 Tex. 627, 306 S.W.2d 884, 886 (1957). There is no particular form required for a commitment order. *Ex parte Palmateer*, 150 Tex. 510, 243 S.W.2d 160 (1951). Since this commitment order is based upon a finding of contempt, it must be read in conjunction with the contempt order of July 28, 1983, (signed August 4, 1983) to determine its validity.

 The June 28, 1984, commitment order under which relator was jailed recites that the relator "stands charged with Contempt of Court in failing and refusing to comply with the terms of the judgment/order" entered July 28, 1983. The commitment order would have been more precise if it had recited that the relator "stands charged with failing and refusing to comply with the conditions upon which enforcement of the court's contempt order of July 28, 1983, was suspended, such order of July 28, 1983, having adjudged Darwin Ray Crawford to be in contempt for failing to pay child support of $400 per month on March 15, April 15, May 15 and June 15, 1983, as ordered in the divorce decree signed on March 4, 1983." Nevertheless we hold that the commitment order as written sufficiently tells relator why he is being punished and under what charge he is held. The July 28, 1983, contempt order referred to in the commitment order specifically states that relator is in contempt for failing to pay four months of child support

payments of $400 each and assesses punishment at 30 days in jail. Not all drafting errors invalidate an otherwise complete commitment order. *Ex parte Benitez*, 590 S.W.2d 704, 707 (Tex.1979); *Ex parte Hall*, 611 S.W.2d 459, 460–61 (Tex.Civ.App.—Dallas 1980, no writ). The commitment order viewed as a whole is sufficiently clear and certain and states in which respect the court's previous order had been violated. *Cf. Ex parte Jenkins*, 593 S.W.2d 395 (Tex. Civ.App.—Dallas 1980, no writ).

 A commitment order containing coercive provisions, as did this one, must additionally specify in clear and unambiguous language what the imprisoned one is required to do in order to be released. *Ex parte Proctor*, 398 S.W.2d 917 (Tex.1966); *cf. Ex parte Nivens*, 592 S.W.2d 1 (Tex.Civ. App.1979—Houston [1st Dist.] 1979, no writ). Again this commitment order meets this requirement, but it contains an error that can be corrected now.

 At the July 28, 1983, contempt hearing relator was found in contempt for failing to pay $1,600 in child support and charged with costs of $53 and attorney's fees of $375. The commitment order states that the relator must pay attorney's fees of $1,835 before he can be released. The commitment order is based upon a finding of contempt made July 28, 1983. At that time the court fixed the attorney's fees. Relator did not have notice before the compliance hearing that he could be charged with additional fees. It is regrettable that this ruling leaves the movant's attorney unrewarded for diligently pursuing this case. This result could have been avoided if the contempt order had stated that relator would be held for additional attorney's fees should he fail to comply and further proceedings became necessary.

Application for writ of habeas corpus is denied and relator is remanded to the custody of the sheriff of Harris County for confinement pursuant to the lower court's order of commitment, except that attorney's fees of $1,835 shall be reduced to $375.