**In re Arthur BROUSSARD, Relator.**

**No. 14–03–00413–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 5, 2003.

Michelle Leblanc Folger, Houston, for relator.

Sharron K. Wall, Thomas J. Wallace, Houston, for respondent.

Panel consists of Justices ANDERSON, SEYMORE and GUZMAN.

## OPINION

CHARLES SEYMORE, Justice.

Relator, Arthur Broussard, challenges the trial court's order of March 18, 2003, finding relator in contempt, revoking suspension of commitment, and committing relator to jail. In six issues, relator asserts that his due process rights have been violated. On April 18, 2003, we issued an order, granting relator's petition pending final determination of this cause, and set bond of $500.00. Relator posted bond and was released from incarceration. Because we find the contempt order void, we grant relator's petition, order relator released from the bond set by this Court on April 18, 2003, and order relator discharged from custody.

### History

On February 5, 2002, the trial court found relator in contempt for failure to pay court-ordered child support arrearages of $1,551.78, including interest. Punishment was assessed at confinement in the county jail for 180 days and day-to-day thereafter until he purged himself of the contempt by paying the arrearage, attorney's fees and court costs. Commitment was suspended pursuant to certain listed conditions, including the requirement that he pay his ongoing child support obligation of $300.00 per month, payable on the 1st of each month.

On June 7, 2002, the trial court entered a judgment of contempt nunc pro tunc, which added the relator's failure to make certain health insurance premium reimbursement payments, as additional child support. The punishment ordered was the same as in the February 5, 2002, order, but the conditions for suspension of commitment included a new condition, the requirement that relator pay and continue to pay, as additional child support, the health insurance premium of $19.00 on the 1st and 15th of each month.

On December 31, 2002, a motion for enforcement was filed. On March 18, 2003, the trial court held a hearing on the enforcement motion and issued an order, revoking suspension of commitment, and holding relator in contempt. In this order, the trial court found that relator had failed to comply with prior orders by failing to make child support payments of $300.00 on February 1, 2002, February 15, 2002, March 1, 2002, March 15, 2002, and April 1, 2002. Accordingly, the trial court committed relator to the county jail for confinement for a period of 180 days for each violation, with the sentences to run concurrently. The trial court also ruled that relator remain in confinement day to day until relator paid, as additional child support, attorney's fees and other fees relating to commitment.[1]

### Failure to Make Bi–Monthly Payments of $300.00 in Child Support

▪ Relator first complains that his due process rights were violated when he was incarcerated for allegedly failing to timely pay $300.00 bi-monthly, when the divorce decree did not require him to make bi-monthly payments of $300.00. The March 18, 2003 contempt order (hereinafter "the contempt order") found that relator had failed to comply with prior orders by failing to make child support payments of

---

1. During oral argument, counsel for both parties admitted that relator has paid the fees assessed in the order imposing civil contempt, and therefore, relator will not have to be incarcerated after completion of the criminal portion of the contempt order.

$300.00 on February 1, 2002, February 15, 2002, March 1, 2002, March 15, 2002, and April 1, 2002. The Divorce Decree, however, only required relator to pay $300.00 per month, payable on the 1st of each month.

■■■ An original habeas corpus proceeding is a collateral attack on a contempt judgment. *Ex parte Rohleder,* 424 S.W.2d 891, 892 (Tex.1967). The purpose of a writ of habeas corpus is not to determine the guilt of the contemnor, but only to determine whether he was afforded due process of law or if the order of contempt was void. *Ex parte Gordon,* 584 S.W.2d 686, 688 (Tex.1979). A court will issue a writ of habeas corpus if the order underlying the contempt is void, *Ex parte Shaffer,* 649 S.W.2d 300, 302 (Tex.1983), or if the contempt order itself is void. *Gordon,* 584 S.W.2d at 688. An order is void if it is beyond the power of the court to enter it, or if it deprives the relator of liberty without due process of law. *Ex parte Barlow,* 899 S.W.2d 791, 794 (Tex.App.-Houston [14th Dist.] 1995, orig. proceeding).

Section 157.166 of the Family Code sets out the required contents of a child support enforcement order. TEX. FAM.CODE ANN. § 157.166 (Vernon 2002). The enforcement order must include, among other things, the provisions of the order for which enforcement was requested and the acts or omissions that are the subject of the order. *Id.* at (a). Here, the trial court set out the provisions correctly, but when stating relator's omissions, it found violations of requirements not found in any prior order. The trial court found relator in contempt for failing to make payments of $300.00 on February 1, 2002, February 15, 2002, March 1, 2002, March 15, 2002, and April 1, 2002. The Divorce Decree ordered relator to make child support payments of $300.00 per month, payable in one installment on the 1st of each month.

Because no underlying order required relator to make payments of $300.00 on the 15th of the month in addition to $300.00 payments on the 1st of the month, relator should not be the subject of contempt proceedings for failing to make the February 15th and March 15th payments of $300.00. Thus, the portion of the contempt order holding relator in contempt for failing to make $300.00 payments on February 15th and March 15th is void.

Real party in interest counters that the trial court's intent was to find relator in contempt for failing to make five bi-monthly payments of the health insurance premiums. The Divorce Decree did impose on relator the additional child support obligation of paying health insurance premiums of $19.00 bi-monthly. Thus, real party concedes that it was error for the trial court to hold relator in contempt for failing to pay $300.00 on February 15th and March 15th. Real party argues that, because the contempt order assesses separate sentences for each violation, only the erroneous violations are void and not the entire order. Real party asserts that we have authority to reform the order by severing the two erroneous violations, those for February 15, 2002 and the March 15, 2002, while retaining the otherwise valid commitment order.

■■ We agree with real party that, if a severable portion of the contempt or commitment order is void, an appellate court may strike the offending portion and deny relief as to the valid portion of the order. *See Ex parte Roosth,* 881 S.W.2d 300, 301 (Tex.1994) (severing provision barring good behavior credit and denying relief as to remainder of order); *Ex parte Linder,* 783 S.W.2d 754, 758 (Tex.App.-Dallas 1990, orig. proceeding) (severing portion of contempt judgment confining relator for failure to pay December 15, 1980 payment as there was no order requiring that pay-

ment, and denying leave as to remainder of contempt judgment). If this were the only error rendering the contempt order void, the court could merely strike the references to the failure to pay $300.00 on February 15th and March 15th. Because in subsequent sections of this opinion we find the order void on other grounds, we decline real party's request that we strike the references to February 15, 2003 and March 15, 2003.

## Untimely Payment of Health Insurance Premium

■ In his second issue, relator argues his due process rights were violated when he was incarcerated for allegedly making untimely payments for health insurance premiums ordered as child support of $38.00 because both relator and real party were ordered to pay this amount under the terms of the divorce decree. Relator claims the divorce decree is ambiguous because it orders both relator and real party to provide payments for health insurance as child support. Because he claims this portion of the decree is ambiguous, relator asserts it cannot be enforced by contempt.

The provisions for payment of health insurance premiums are set out in Exhibit A to the divorce decree. In this exhibit, the trial court orders real party to maintain the child as a dependent on real party's health insurance plan and orders that relator "pay to [real party] the cost of insuring the child on [real party's] health insurance plan in the amount of $19.00 which is to paid along with the child support payment beginning with the first $19.00 payment due on July 1, 2000, the second $19.00 payment due on July 15, 2000, and thereafter in payments of $19.00 due on the first day of the month and a like payment of $19.00 on the fifteenth day of each and every month. . . ." Real party

is ordered to make like payments to relator only if the health insurance for the children is converted to relator's health insurance. Accordingly, we find the decree unambiguous regarding relator's health insurance premium reimbursements. We overrule relator's second issue.

## Judgment Nunc Pro Tunc

■ In his third issue, relator claims his due process rights were violated when he was committed for failure to comply with an order nunc pro tunc signed after the trial court lost plenary power and which increased relator's punishment. In response, real party asserts that the nunc pro tunc judgment merely corrected a clerical error and that relator waived any complaint about this order because he approved the order as to form and substance.

■ Turning first to the waiver claim, real party cites as support the cases of *Ex parte Crawford,* 684 S.W.2d 124 (Tex.App.-Houston [14th Dist.] 1984, orig. proceeding) and *Cisneros v. Cisneros,* 787 S.W.2d 550 (Tex.App.-El Paso 1990, orig. proceeding). The El Paso court has held that approval of a judgment as to substance waives any complaint about that judgment. 787 S.W.2d at 552. In *Crawford,* there was no approval as to substance by the parties, but both parties stated in their briefs that the child support order was an "agreed" order. 684 S.W.2d at 127. Accordingly, this court held that any complaint about the order was waived. *Id.* We find *Crawford* distinguishable because the parties here do not refer to the judgment nunc pro tunc as an agreed judgment.

In a subsequent case, this court has specifically held that, while a party's consent to a judgment can waive error, the consent must be explicit and unmistakeable, and approval as to form and substance, standing alone, does not transform a judgment into a consent judgment.

*Chang v. Linh Nguyen,* 81 S.W.3d 314, 316 n. 1 (Tex.App.-Houston [14th Dist.] 2001, no pet.). In *Chang,* the parties' attorneys had approved the judgment as to form and substance, but this court found that counsels' approval of the judgment, without more in the record to show the judgment was a consent judgment, did not result in waiver of Chang's appeal. *Id.* Thus, we hold relator's approval of the nunc pro tunc judgment did not result in waiver of relator's right to complain about this judgment.

■■■ The Rules of Civil Procedure provide for entry of a corrected judgment, or a nunc pro tunc judgment, after expiration of a court's plenary power. TEX.R. CIV. P. 306a(6). The purpose of a judgment nunc pro tunc is to correct a clerical error in the judgment after the court's plenary power has expired. *Ferguson v. Naylor,* 860 S.W.2d 123, 126 (Tex.App.-Amarillo 1993, writ denied). To be clerical in nature, the error must be one that is not the result of judicial reasoning, evidence, or determination. *Andrews v. Koch,* 702 S.W.2d 584, 585 (Tex.1986). The question whether an error is clerical or judicial is a question of law. *Dickens v. Willis,* 957 S.W.2d 657, 659 (Tex.App.-Austin 1997, no pet.). When deciding whether a correction is a judicial or a clerical error, we look to the judgment actually rendered. *Escobar v. Escobar,* 711 S.W.2d 230, 231 (Tex.1986). The court can only correct the entry of a final written judgment that incorrectly states the judgment actually rendered. *Id.* at 231–32. Even if the court renders judgment incorrectly, it cannot alter a written judgment that precisely reflects the incorrect rendition. *Id.* at 232. A judgment nunc pro tunc should be granted if the evidence is clear and convincing that a clerical error was made. *Riner v. Briargrove Park Prop. Owners, Inc.,* 976 S.W.2d 680, 683 (Tex.App.-Houston [1st Dist.]

1997, no writ); *Stuart v. City of Houston,* 419 S.W.2d 702, 703 (Tex.Civ.App.-Houston [14th Dist.] 1967, writ ref'd n.r.e.).

Typical clerical changes to judgments that have been upheld include corrections of the date of judgment, *Nolan v. Bettis,* 562 S.W.2d 520, 523 (Tex.Civ.App.-Austin 1978, no writ), correction of a party name, *Carlyle Real Estate Ltd. Partnership–X v. Leibman,* 782 S.W.2d 230, 233 (Tex.App.-Houston [1st Dist.] 1989, no writ), and correction of a numerical error, *Escobar v. Escobar,* 711 S.W.2d 230, 232 (Tex.1986). Other clerical changes have been upheld where the record clearly showed the change was to the judgment entered, not the judgment rendered. *See, e.g., Jenkins v. Jenkins,* 16 S.W.3d 473, 482 (Tex.App.-El Paso 2000, no pet.) (record of hearing clearly showed trial court rendered judgment that mother was ordered to maintain child's residence at a specified address, rather than the judgment entered, which merely stated the mother had the right to establish the child's residence anywhere within the county).

Because the obligation to pay $38.00 in health insurance premium reimbursement was not mentioned in the original judgment of contempt, the trial court rendered the nunc pro tunc judgment, noting relator's obligation to pay $38.00 per month for health care reimbursement. The nunc pro tunc also included this obligation as a condition for suspension of commitment, additional to those in the original judgment of contempt. This is much more of a substantive change than correction of a name or date. Real party argues that the addition is merely clerical, but real party presents no proof of this assertion other than to argue that the obligation to pay the health insurance premium was a continuing one because it had been ordered in

the Decree of Divorce. Absent any record showing that the language of the original judgment of contempt did not conform to the judgment actually rendered, we cannot conclude that the addition of another child support obligation as a condition of probation is merely a clerical error. Because the judgment nunc pro tunc did not merely correct a clerical error, but rather imposed a new obligation on relator, we hold that it was issued outside the trial court's plenary power and is void. Thus, to the extent the findings of contempt in the contempt order are based on a violation of any conditions in the judgment of contempt nunc pro tunc, the contempt order is void.

## Lack of Notice of Noncompliance

██ Relator next complains that his due process rights were violated when notice of alleged noncompliance was not included in the motion for contempt. The motion for enforcement charges relator "as set out in Exhibit 'A',", but relator complains that Exhibit A, which is a chart, fails to fully state the manner of relator's alleged noncompliance as required by *Ex parte Edgerly*, 441 S.W.2d 514 (Tex.1969) and section 157.002(a)(2) of the Family Code. Although the chart lists all payments made and all dates payments were made, relator claims the chart does not show which payments relator did not make or how relator is in noncompliance.

Real party claims relator waived this complaint by failing to file special exceptions or otherwise object to lack of notice. In support of this claim, real party cites *Ex parte Occhipenti*, 796 S.W.2d 805 (Tex. App.-Houston [1st Dist.] 1990, orig. proceeding) and *Ex parte Blackmon*, 529 S.W.2d 570 (Tex.App.-Houston [1st Dist.] 1975, orig. proceeding). This court explicitly disagreed with the holdings in these cases and the authority upon which they rely in *Ex parte Barlow*, 899 S.W.2d 791, 796 (Tex.App.-Houston [14th Dist.] 1995, orig. proceeding). In addition to finding that *Occhipenti* and *Blackmon* convert an incorrect assumption into law, we found that the holding in these cases conflicts with the traditional due process protections afforded in contempt proceedings. 899 S.W.2d at 797. Accordingly, this court held that failure to file special exceptions did not result in waiver of the notice required. *Id.* at 798.

██ Due process of law demands that before a court may punish for constructive contempt, or contempt not committed in the court's presence, the accused must be given full and complete notice of the subject matter and of "when, how, and by what means the defendant has been guilty of the alleged contempt." *Edgerly*, 441 S.W.2d at 516. *See also Barlow*, 899 S.W.2d at 795. Here, relator received the motion for enforcement that requested a finding of contempt and revocation of suspension of commitment. The motion alleged that relator had violated prior orders of the court by failing to make child support and arrearage payments timely, as set out in Exhibit "A" to the motion. Exhibit "A" is a printout of dates payments were due, the amount of payments due on each date, the amount paid on the date due, and the amounts actually paid, whether on the date the payment was due or on another date. Included in this printout are the dates and payments for which relator was held in contempt. Although Exhibit A shows when relator made payments, Exhibit A also shows whether those payments were timely. We find that Exhibit "A" to the motion for enforcement provided relator with sufficient notice of any allegations of failures to timely make payments of child support.

**Ambiguity of Child Support Orders**

■ Relator next complains that his due process rights were violated because the trial court found him guilty for untimely paying child support, notwithstanding the fact that the court's previous order included inconsistent and ambiguous requirements regarding payment. Relator claims he was subject to three different orders with different payment amounts and payment due dates and that these orders created an ambiguity as to the terms and obligations imposed on him, thereby rendering the orders void and unenforceable.

■ A contempt order must be based on one's "disobedience of an order that spells out 'the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him'." *Ex parte Padron*, 565 S.W.2d 921, 921 (Tex.1978). To sentence a person to confinement for disobedience of a prior order, such prior order " 'must carry with it no uncertainty, and must not be susceptible of different meanings or constructions, but must be in the form of a command, and when tested by itself, must speak definitely the meaning and purpose of the court in ordering'." *Ex parte Slavin*, 412 S.W.2d 43, 45 (Tex.1967) (quoting *Ex parte Duncan*, 42 Tex.Crim. 661, 62 S.W. 758 (1901)).

The three orders to which relator refers are the Divorce Decree, the Wage Withholding Order, and the First Amended Wage Withholding Order. The Divorce Decree required relator to pay $300.00 in child support on the 1st of each month and to pay $19.00 in additional child support (for health insurance premiums) on the 1st and 15th of each month.

When the trial court signed the decree, she also signed the first wage withholding order. This wage withholding order ordered relator's employer to withhold the following amounts from relator's earnings:

$300.00　if Obligor is PAID MONTHLY:

$300.00 on current support,

$150.00　$150.00 if Obligor is PAID TWICE MONTHLY:

$150.00 on current support,

$138.46　$138.46 if Obligor is PAID EVERY OTHER WEEK:

$138.46 on current support

$ 69.23　$ 69.23 if Obligor is PAID EVERY WEEK:

$ 69.23 on current support.

This order also states the maximum amount to be withheld shall not exceed 50 percent of relator's disposable earnings.

Because the original wage withholding order failed to include the obligation to pay health insurance premiums, the trial court subsequently signed a First Amended Order of Withholding from Earnings for Child Support Nunc Pro Tunc on June 7, 2002, which ordered relator's employer to withhold the following amounts from relator's earnings:

1. **$ 338.00** if the OBLIGOR is paid monthly, which includes $300.00 for current child support, plus $38.00 for health insurance premium reimbursement.

2. **$ 169.00** if the OBLIGOR is paid twice monthly, which includes $150.00 for current child support, plus $19.00 for health insurance premium reimbursement.

3. **$ 156.00** if the OBLIGOR is paid every other week, which includes $138.45 for current child support, plus $17.45 for health insurance premium reimbursement.

4. **$ 78.00** if the OBLIGOR is paid weekly, which includes $69.23 for current child support, plus $8.77 for health insurance premium reimbursement.

This order also states the maximum amount to be withheld shall not exceed 50 percent of relator's disposable earnings.

Relator claims that payment in accordance with either of the wage withholding orders results in technical noncompliance with the Divorce Decree because the payments are paid in different amounts and on different dates, based on when relator is paid by his employer. The printout attached to the motion for enforcement reflects that relator made payments twice a month, similar to that provided in the wage withholding orders, in the months for which he was found in contempt.

Real party counters that relator's only obligations arise from the Divorce Decree and the subsequent judgments of contempt. Real party claims the withholding orders do not obligate relator to pay anything and, therefore, they do not change the dates or amount of support due.

■■■ Generally, an employer's withholding order is not intended to replace the initial child support ordered by the court, nor to affect the amount ordered or change the due dates. *Ex parte Christensen,* 868 S.W.2d 376, 379 (Tex.App.-Houston [1st Dist.] 1993, orig. proceeding). In *Christensen,* the First Court of Appeals addressed the issue whether the due dates and amounts due under a divorce decree are modified by a wage withholder order. In *Christensen,* the decree set out "the required withholding provisions" and the wage withholding order was filed with and incorporated into the decree. *Id.* The *Christensen* decree also stated that the relator's child support obligations were "subject to the provisions for withholding from earnings for child support specified below...." Because the decree provided for a request for wage withholding and service upon the employer, the court held that the date of service of the withholding order on the employer was crucial in determining whether the withholding order was effective to alter the due dates for payment of child support. *Id.* Because the record in *Christensen* did not establish the date of service of the withholding order on the obligor's employer, the court held that the child support obligation in the decree was not superseded by the withholding order provisions. *Id.*

The decree in this case states that a wage withholding order was signed, but the withholding order was not incorporated into the decree. Moreover, there is no statement in the decree that the child support obligations may, upon compliance with the requirements for request and service of a withholding order, become subject to a withholding order. The decree includes provisions for requesting wage withholding and service of the order on the obligor's employer. Thus, unlike the decree in *Christensen,* the decree in this case does not, on its face, allow for modification of the decree provisions for the amount

and date of payment of child support by a wage withholding order.[2]

Even if the decree was subject to the withholding order, it is unclear from the record here, as it was in *Christensen,* whether relator's employer was served with the wage withholding order and whether relator's bi-monthly payments in February, March, and April 2002, were made by relator's employer pursuant to a wage withholding order. Relator testified that he thought the withholding order was served in March and that his employer made payments pursuant to the withholding order. The printout attached to the enforcement motion reflects that relator made twice-monthly payments in February, March, and April 2002, the months for which he was held in contempt. These payments, however, were not made on the first of the month, as required by the decree. Accordingly, the trial court did not hold relator in contempt for nonpayment, but for failure to make *timely* payments. This is confirmed by the fact that the contempt order form, which provided blanks for inclusion of the dates of nonpayment, and stated that relator was held in contempt for his failure to pay, included a handwritten interlineation to reflect that relator was held in contempt for his failure to *timely* pay. Furthermore, relator's civil contempt punishment is not tied to relator's payment of any arrearage, but requires his continued incarceration until he pays attorney's fees of real party's counsel, and other fees and costs. Both parties admit, and the contempt order reflects,

that relator is not currently in arrears on his child support obligations.

In any event, the lack of evidence in the record showing that the wage withholding order had been served on relator's employer prevents us from reaching the issue whether the provisions of the wage withholding order superseded the due dates for payment of child support in the decree. Accordingly, we must find that relator's obligation for child support payments and the deadlines for these payments continued to arise from the divorce decree. We overrule relator's fifth issue.

## Commitment until "Further Order of the Court"

■ In his final issue, relator claims his due process rights were violated when the contempt and commitment order ambiguously specifies that he is to remain in jail for 180 days, served in 48–hour increments, until "further order of this Court." The contempt order provides for punishment of 180 days in jail for each violation, with these sentences to be served concurrently, and then day-to-day until relator pays $855.24 in attorney's fees and costs, and pays a total of $83.00 in fees. The order further states that relator's sentence shall be served as set out in Exhibit "A." Attached to the order is Exhibit "A," which states in pertinent part:

> IT IS FURTHER ORDERED that said sentence shall be served in forty eight hour increments on weekends beginning at 7:00 p.m. on Friday and ending at

**2.** During oral argument, counsel for real party was asked whether the failure to incorporate the wage withholding order and specify that child support obligations could become subject to the withholding order, was crucial here. Counsel for real party did not agree that this omission was crucial and stated that, even if the withholding order had been incorporated into the decree, it would not have changed the due dates for relator's child support obligations. This makes little sense because, if payment pursuant to the provisions of an effective wage withholding order do not constitute compliance with the obligor's child support obligation, an obligor whose employer pays pursuant to the wage withholding order is in the impossible position of having paid as provided in the withholding order, but still being technically in violation of the provisions of the decree.

7:00 p.m. on the following Sunday, with the first such incremental sentence to begin at 7:00 p.m. on Friday, <u>March 21</u>, 2003 and end at 7:00 p.m. on Sunday, <u>March 23</u> 2003, and thereafter to begin at 7:00 p.m. on each and every Friday and to end at 7:00 p.m. on the following Sunday until further order of this Court.

Relator complains that he cannot determine what he must do to satisfy the court that he has completed his sentence when the trial court requires commitment "until further order of this Court." Relator claims this language is ambiguous and void as was that in *Ex parte Quevedo*, 611 S.W.2d 711 (Tex.Civ.App.-Corpus Christi 1981, orig. proceeding). Relator further notes that the commitment order has no date for release, since release is conditioned by "further order of this Court."

In *Quevedo*, the order of contempt stated that relator would not be released until he met the requirement of paying delinquent child support of $2,250.00, together with $350.00 in attorney's fees to petitioner's attorney, *"and until further orders of this Court." Id.* at 712. The court found that this portion of the order set out an ambiguous condition for release in that relator could not determine with clarity to what "further orders of this Court" referred. *Id.* Accordingly, the court found this provision rendered the order void. *Id.* at 713.

Real party argues that *Quevedo* is distinguishable because the sentence in that case only assessed civil contempt. Here, the "until further order of this Court" language relates only to the criminal contempt portion of relator's sentence. Thus, the sentence in this case does not tie the purging provision to the nebulous "until further order of the court" language. Because the "until further order of the court" language in this case is tied to the criminal contempt sentence, which is a finite sentence, real party asserts the commitment language is clear and unequivocal. Even if the "until further order of the court" language does relate to the civil portion of relator's sentence, real party claims any argument concerning civil commitment is premature until relator has served the criminal portion of the sentence.

In *Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967), the supreme court stated:

Where the court seeks to punish either by fine, arrest, or imprisonment for the disobedience of an order or command, such order or command must carry with it no uncertainty, and must not be susceptible of different meanings or constructions, but must be in the form of a command and, when tested by itself, must speak definitely the meaning and purpose of the court in ordering.

*Id.* at 45 (quoting *Ex parte Duncan*, 42 Tex.Crim. 661, 62 S.W. 758 (1901)).

The trial court in this case sentenced relator to confinement for a period of 180 days, but Exhibit A to the contempt order provides for service of this sentence in forty-eight hour increments on weekends "until further order of this Court." Thus, the two directives are susceptible of different meanings. Exhibit A can be read to mean that relator could be held in jail until further order of the court, even if that occurred after relator had completed serving the full equivalent of 180 days in jail. Because the language in the order and Exhibit A create an uncertainty in the length of relator's sentence, it is irrelevant whether the uncertainty is part of the criminal contempt sentence or the civil contempt sentence. Despite the fact that *Quevedo* concerned a civil contempt sentence, we believe the reasoning is equally applicable to a criminal contempt sentence and should be extended. We find that the provision in this case conditioning release on "further order of this Court" creates an

ambiguity that prevents relator from determining when he may achieve release from incarceration. Therefore, this provision is void.[3] Because uncertainty lies with the criminal and not the civil portion of the contempt sentence, our ruling is not premature.

**Conclusion**

We hold that the March 18, 2003, contempt order is void. Accordingly, we grant relator's petition for writ of habeas corpus. We further order relator released from the bond set by this Court on April 18, 2003, and order relator discharged from custody.

---

**3.** Although the supreme court has held that a void portion of a contempt order may be struck and the remaining valid portion of the order upheld, *see Ex parte Roosth,* 881 S.W.2d 300, 301 (Tex.1994), we decline to strike the language in Exhibit A as this court did with this same language in *In re Watson,* 108 S.W.3d 531 (Tex.App.-Houston [14th Dist.], orig. proceeding), because other errors in the order render it void.