In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00094-CV


______________________________




IN RE:


PILGRIM'S PRIDE CORPORATION






 


Original Mandamus Proceeding







 
 



Before Morriss, C.J., Ross and Carter, JJ.

Opinion by Chief Justice Morriss



O P I N I O N


 In an ongoing series of discovery disputes (1) with Poultry Plant Refrigeration and Maintenance
(PPR&M), Pilgrim's Pride Corporation has petitioned this Court for a writ of mandamus. In that
petition, Pilgrim's Pride complains of the order of the trial court directing Pilgrim's Pride and
Hibernia National Bank, PPR&M's former financing bank, to produce documentation reflecting the
amount Pilgrim's Pride paid Hibernia for certain debt instruments of PPR&M, which Pilgrim's Pride
seeks to use in this lawsuit as affirmative claims, and defensive offsets, against PPR&M. We deny
Pilgrim's Pride's petition.

 The underlying litigation is a suit on sworn account filed by PPR&M, Albert Littleton, and
William Pierce against Pilgrim's Pride. Pilgrim's Pride asserts several affirmative defenses,
including satisfaction, offset, setoff, and equitable issues. In addition, Pilgrim's Pride asserts
counterclaims for breach of contract, declaratory relief, fraud, civil conspiracy, and equitable issues. (2)

 After filing the current lawsuit against Pilgrim's Pride, PPR&M defaulted on certain loans
made to PPR&M by Hibernia. Hibernia intervened in the lawsuit but eventually assigned its claims
to Pilgrim's Pride. (3) Pilgrim's Pride is now seeking to collect the amounts due under the assigned
loans from PPR&M, Littleton, and Pierce. Although in discovery Pilgrim's Pride produced several
documents concerning the assigned loans, Pilgrim's Pride objected to the request to produce
documents showing the amount Pilgrim's Pride paid for the assignment based on relevance. After
holding a hearing, the trial court granted PPR&M's emergency motion to compel production.

  Pilgrim's  Pride's  petition  for  writ  of  mandamus  asks  this  Court  to  order  the 
Honorable Ralph K. Burgess, presiding judge of the 5th Judicial District Court of Bowie County,
Texas, to vacate its order of September 5, 2006, which compelled production of documents
responsive to requests 7, 9, 10, and 11 of PPR&M's Second Request for Production of Documents, (4)
all four aimed at finding out the amount of consideration paid for the debts. For the reasons set forth
below, we deny Pilgrim's Pride's petition.

 Mandamus issues only when the mandamus record establishes (1) a clear abuse of discretion
or the violation of a duty imposed by law and (2) the absence of a clear and adequate remedy at law.
Cantu v. Longoria, 878 S.W.2d 131 (Tex. 1994); Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex.
1992); Pilgrim's Pride Corp., 187 S.W.3d at 198. Mandamus is an extraordinary remedy that will
issue only to correct a clear abuse of discretion, or, in the absence of another statutory remedy, when
the trial court fails to observe a mandatory statutory provision conferring a right or forbidding a
particular action. Abor v. Black, 695 S.W.2d 564, 567 (Tex. 1985).

 Mandamus is not available for most discovery disputes. An appeal is not an inadequate
remedy merely because it may involve more expense or delay than obtaining an extraordinary writ. 
Walker, 827 S.W.2d at 842. However, "[a]n order compelling discovery that is well outside the
proper bounds is reviewable by mandamus." In re Am. Optical Corp., 988 S.W.2d 711, 713 (Tex.
1998); see K Mart Corp. v. Sanderson, 937 S.W.2d 429, 431 (Tex. 1996). A party will not have an
adequate remedy by appeal when the appellate court would be unable to cure the trial court's
discovery error. In re Kuntz, 124 S.W.3d 179, 181 (Tex. 2003); Walker, 827 S.W.2d at 843.
"[W]here  a  discovery  order  compels  production  of  'patently   irrelevant   or  duplicative
documents,' . . . there is no adequate remedy by appeal because the order "imposes a burden on the
producing party far out of proportion to any benefit that may obtain to the requesting party." In re
CSX Corp., 124 S.W.3d 149, 153 (Tex. 2003); see Walker, 827 S.W.2d at 843. Information "is
'patently' or 'clearly' irrelevant when . . . reasonable minds would not differ that it has no tendency
to prove or disprove any issue involved in the subject matter of the suit and the information's
irrelevancy is apparent from the face of the record." MCI Telecomm. Corp. v. Crowley, 899 S.W.2d
399, 403-04 (Tex. App.--Fort Worth 1995, orig. proceeding [leave denied]).

 Pilgrim's Pride contends the documents sought by PPR&M, dealing with the consideration
paid for the assignment, are not relevant or reasonably calculated to lead to the discovery of
admissible evidence. Pilgrim's Pride cites Carter v. DeJarnett, 523 S.W.2d 88, 90-91 (Tex.
App.--Texarkana 1975, writ ref'd n.r.e.), for the proposition that a holder of a promissory note is
entitled to recover the full amount due on the note regardless of what was paid for the assignment. 
Thus, according to Pilgrim's Pride, the amount paid for the assignment is irrelevant to the current
dispute and the trial court abused its discretion in ordering production of the documents. While, if
the sole matter at issue is whether one party may recover the amount due on a promissory note it has
purchased, the amount of consideration it paid to purchase that note--if at least some value is
paid--is irrelevant, we disagree that the documents sought are "patently irrelevant" or that the trial
court clearly abused its discretion.

 Pilgrim's Pride relies extensively on the Texas Supreme Court's decision in Ford Motor Co.
v. Leggat in asserting that the trial court abused its discretion. See Ford Motor Co. v. Leggat, 904
S.W.2d 643 (Tex. 1995). (5) In Leggat, Reynauld White was killed while driving a Ford Bronco II,
which rolled over, causing his death. Id. at 645. White's estate filed a products liability suit against
Ford. Id. The Texas Supreme Court held the trial court clearly abused its discretion in ordering Ford
to produce settlement amounts in similar accidents. Id. at 649-50. Although noting settlement
agreements are discoverable to the extent they are relevant, the court noted pursuing discovery of the
amounts of settlement to determine a settlement strategy was not a proper purpose of discovery. Id.
at 649; cf. In re Frank A. Smith Sales, Inc., 32 S.W.3d 871, 875 (Tex. App.--Corpus Christi 2000,
orig. proceeding) ("real" motivation not determinative, if legitimate basis exists for discovery). The
Texas Supreme Court specifically noted the parties provided no explanation of how the settlement
agreements were relevant. Leggat, though, is distinguishable from the current dispute. The
settlement agreements in Leggat concerned other lawsuits and different parties. The assigned loans
are at issue in the current case. (6) Further, as discussed below, the trial court did not abuse its
discretion in finding the request was reasonably calculated to lead to discovery of relevant evidence.

 In general, discovery may be obtained of any unprivileged information (7) relevant to the subject
matter of the case, including inadmissible evidence, provided the request is reasonably calculated
to lead to the discovery of admissible evidence. See Tex. R. Civ. P. 192.3(a); see also CSX Corp.,
124 S.W.3d at 152; Monsanto Co. v. May, 889 S.W.2d 274, 276 (Tex. 1994). Because discovery
may not be used as a fishing expedition, discovery requests must be reasonably tailored to include
only matters relevant to the case. CSX Corp., 124 S.W.3d at 152; Am. Optical Corp., 988 S.W.2d
at 713. Information is relevant if it tends to make the existence of a fact that is of consequence to
the determination of the action more or less probable than it would be without the information. Tex.
R. Evid. 401. 

 Whether a discovery request is reasonably calculated to lead to the discovery of admissible
evidence is largely within the trial court's discretion. See In re Colonial Pipeline Co., 968 S.W.2d
938, 941 (Tex. 1998). Whether the amount of consideration Pilgrim's Pride paid to obtain the
assignments from Hibernia ultimately proves inadmissible at trial, (8) the information sought in this
case is not "patently" irrelevant. By pleading a counterclaim based on the assigned loans, Pilgrim's
Pride has placed the assigned loans in dispute. The transaction by which Pilgrim's Pride allegedly
acquired these rights from the original lender is the area of inquiry sought by PPR&M in its
discovery request. As such, whether any value was paid for the assigned loans may be relevant. See,
e.g., Tex. Bus. & Com. Code Ann. § 3.203(c) ("Transfer of Instrument; Rights Acquired by
Transfer"); § 3.302(a)(2) ("Holder in Due Course"); § 3.303 ("Value and Consideration") (Vernon
2002). Additionally, Pilgrim's Pride has pled defenses and counterclaims based on equitable
grounds. (9) The amount paid for the loans could be relevant under one of these theories. The trial
court did not abuse its discretion in finding the request either sought discovery of admissible
evidence or was reasonably calculated to lead to discovery of admissible evidence.

 A reasonably tailored discovery request is not overbroad merely because it may include some
information of doubtful relevance, and "parties must have some latitude in fashioning proper
discovery requests." Texaco, Inc. v. Sanderson, 898 S.W.2d 813, 815 (Tex. 1995). In general, the
scope of discovery is broadextending to "any matter that is not privileged and is relevant to the
subject matter of the pending action." Tex. R. Civ. P. 192.3(a). Further, "only in certain narrow
circumstances is it appropriate to obstruct the search for truth by denying discovery." State v. Lowry,
802 S.W.2d 669, 671 (Tex. 1991); Collins v. Cleme Manor Apartments, 37 S.W.3d 527, 532-33
(Tex. App.--Texarkana 2001, orig. proceeding). 

  Because  reasonable  minds  could  differ  concerning  whether  the  information  sought
either (1) is relevant to any issue involved in the lawsuit or (2) could reasonably lead to the discovery
of such information, the documents sought are not "patently irrelevant." The trial court's order was
not arbitrary and unreasonable, nor did it constitute a clear abuse of discretion.

 We deny Pilgrim's Pride's petition for writ of mandamus.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: October 24, 2006

Date Decided: October 25, 2006
1. This is the third petition for writ of mandamus filed by Pilgrim's Pride Corporation
concerning the dispute between these parties. This Court denied relief on the two previously filed
petitions. See In re Pilgrim's Pride Corp., No. 06-06-00036-CV, 2006 Tex. App. LEXIS 4307 (Tex.
App.--Texarkana May 18, 2006, orig. proceeding) (mem. op.); see also In re Pilgrim's Pride Corp.,
187 S.W.3d 197 (Tex. App.--Texarkana 2006, orig. proceeding).
2. Pilgrim's Pride alleges PPR&M submitted fraudulent invoices seeking payment for work for
which PPR&M had already been compensated, as well as seeking payment for work that was not
necessary or incidental to the fulfillment of PPR&M's obligations under any agreement. Pilgrim's
Pride also alleges PPR&M conspired with former employees of Pilgrim's Pride who would approve
payment of fraudulent invoices in return for payment or other compensation. Specifically, Pilgrim's
Pride alleges PPR&M built a private boathouse for the personal benefit of former Pilgrim's Pride
employees but fraudulently submitted the cost of the work to Pilgrim's Pride. 
3. Apparently, Pilgrim's Pride purchased the lines of credit, notes, and commercial guarantees
from Hibernia. 
4. PPR&M sought and obtained from the trial court an order compelling production of all items
described in certain paragraphs of Requests for Production of July 19, 2005, that is, from Hibernia
National Bank, the items described in requests 7, 9, 10, and 11, and from Pilgrim's Pride, the items
described in requests 7, 9, and 11. The trial court compelled production of these specific items, at
issue in this mandamus proceeding:


 [7.] All documents and tangible things that discuss, relate to, refer to or reflect the
purchase price of any negotiable instrument from Hibernia National Bank, its
successors or assigns, which Pilgrim's Pride Corporation is holder and PPR&M, Inc.
owes a debt, is the borrower or guarantor.

 . . . .

 [9.] All documents and tangible things that discuss, relate to, refer to or reflect the
purchase price of any negotiable instrument from Hibernia National Bank, its
successors or assigns, which Pilgrim's Pride Corporation is holder and Albert
Littleton, as guarantor for PPR&M, Inc., owes a debt, is the borrower or guarantor.


 [10.] All documents and tangible things that discuss, relate to, refer to or reflect any
agreements between Pilgrim's Pride Corporation and Hibernia National Bank, its
successors or assigns, regarding the purchase or assumption of any negotiable
instrument which William Pierce, as guarantor for PPR&M, Inc., owes a debt, is the
borrower or guarantor.


 [11.] All documents and tangible things that discuss, relate to, refer to or reflect the
purchase price of any negotiable instrument from Hibernia National Bank, its
successors or assigns, which Pilgrim's Pride Corporation is holder and William
Pierce, as guarantor for PPR&M, Inc., owes a debt, is the borrower or guarantor.
5. In addition to Leggat, Pilgrim's Pride cites Kuntz, 124 S.W.3d at 180; CSX Corp., 124
S.W.3d at 153; and Sears, Roebuck & Co. v. Ramirez, 824 S.W.2d 558, 559-60 (Tex. 1992). 
6. PPR&M also argues the trial court did not abuse its discretion because the assignment of the
loans is "tantamount to a settlement agreement between Pilgrim's and Hibernia" and, therefore,
discoverable. The record contains no evidence that the assignment of the loans resolved any claims
Hibernia had pending against Pilgrim's Pride. On the basis of the record before us, the assignment
of the loans in this case is not the functional equivalent of a settlement agreement. 
7. Pilgrim's Pride has not claimed any privilege applies to the disputed documents, nor has it
argued that there is any particular difficulty involved in producing the documents.
8. Relevance should not be confused with admissibility. Admissibility is not required for
information to be discoverable. See Tex. R. Civ. P. 192.3(a); Axelson, Inc. v. McIlhany, 798 S.W.2d
550, 553 (Tex. 1990). 
9. Pilgrim's Pride argues PPR&M's sole contention is that the documents at issue are relevant
to Pilgrim's Pride's claims to enforce PPR&M's obligations under the loan documents. We do not
believe PPR&M's claims can be so limited. PPR&M referred, on appeal and to the trial court, to
Pilgrim's Pride's claims in general as "affirmative defenses." Even though PPR&M did argue that
the information was relevant to its obligations under assigned loans, PPR&M did not explicitly
restrict its argument.



l reasoning. See Dickens v. Willis, 957 S.W.2d
657, 659 (Tex. App.—Austin 1997, no pet.). Terri framed the issue at oral argument as
follows: if the error in omitting the provision that addresses the support of the younger
daughter is a judicial error, rather than a clerical error, then Terri loses her argument on
appeal. 
          The Family Code specifically provides that "[a] court may clarify an order rendered
by the court in a proceeding under this title if the court finds, on the motion of a party or on
the court's own motion, that the order is not specific enough to be enforced by contempt." 
Tex. Fam. Code Ann. § 157.421 (Vernon 2002). However, the Family Code also prohibits
a court from substantively changing the provisions of an earlier order with a clarifying order. 
Tex. Fam. Code Ann. § 157.423 (Vernon 2002); Dickens, 957 S.W.2d at 659. A
clarification order is analogous to a judgment nunc pro tunc in that it cannot substantively
change a final order.


 In re Dryden, 52 S.W.3d 257, 263 (Tex. App.—Corpus Christi 2001,
no pet.).
          A clerical error results from inaccurately recording the decision of the court. 
Escobar v. Escobar, 711 S.W.2d 230, 231 (Tex. 1986); Dickens, 957 S.W.2d at 659. To
be clerical in nature, the error must be one that is not the result of judicial reasoning,
evidence, or determination. Andrews v. Koch, 702 S.W.2d 584, 585 (Tex. 1986); Gutierrez
v. Gutierrez, 86 S.W.3d 721, 726 (Tex. App.—El Paso 2002, no pet.). Correction of a
clerical error does not effect a substantive change in the court's order. Dickens, 957
S.W.2d at 659. On the other hand, a judicial error results from judicial reasoning or
determination. Id. Substantive change results from correction of a judicial error. For
instance, an attempt to impose a specific obligation to pay where no such obligation had
previously existed is an unlawful substantive change, not a mere clarification or correction
of a clerical error. McGehee v. Epley, 661 S.W.2d 924, 925–26 (Tex. 1983); In re
Broussard, 112 S.W.3d 827, 833–34 (Tex. App.—Houston [14th Dist.] 2003, orig.
proceeding).
          The salient distinction between "clerical" and "judicial" errors lies in the exercise of
the judgmental offices of the court. Andrews, 702 S.W.2d at 585. In Andrews, a probate
court order allowed a sale of estate property in accordance with a real estate sales
contract, which included a grant of an easement. Id. The recorded deed failed to mention
the easement, however. Id. The administrators obtained from the probate court an order
nunc pro tunc correcting the deed to reflect the conveyance of the easement. Id. After the
court of appeals reversed the probate court's decision, the Texas Supreme Court
determined the correction was proper and affirmed the probate court's correction. Id. at
586. The court reasoned, since the entry of the order nunc pro tunc would not involve
additional judicial reasoning, the error at issue was clerical in nature and the probate court
could correct the deed to properly reflect the judgment originally rendered. Id.
          To further illustrate the well-established rules regarding what qualifies as a judicial
error, we look to the 1891 case of Missouri Pac. Ry. Co. v. Haynes, in which respondents
sued the railway company for the value of eighty-seven bales of cotton, weighing 43,064
pounds, destroyed by fire negligently caused by the company while the cotton was in its
possession. 82 Tex. 448, 18 S.W. 605 (1891). There was no controversy over the number
of bales or their weight, and at the trial the railway company did not deny that eighty-seven
bales were burned. Id. However, in its calculation of the gross weight of the cotton
destroyed, the trial court omitted the bill of lading for six bales of cotton. Id. Nearly six
months after judgment was rendered, respondents moved the trial court to correct the
judgment to include the value of the six bales. Id. The trial judge testified that he found
for respondents the weight of the entire eighty-seven bales, that he intended to give
judgment for that amount, and that he thought he had done so until the motion to correct
the judgment was filed. Id. The trial court granted the motion. Id. The Texas Supreme
Court disagreed, concluding that respondents' remedy, if any, would have been by a timely
motion for new trial or by appeal rather than a motion to reform a final judgment. Id. The
failure of the court to consider and compute the value of the six bales of cotton was a
judicial error, not a clerical error. It was a failure to consider evidence in the case and
represented an erroneous judgment on the facts. Id.
          Similar determinations can be found in cases involving child support orders and
modifications. For instance, when, after its plenary power expired, the trial court entered
a judgment that ordered a father to pay $38.00 per month in reimbursement of his child's
healthcare insurance premiums and the original judgment did not impose such an
obligation, the corrected judgment was ineffective as a judgment nunc pro tunc


 and was
void. Broussard, 112 S.W.3d at 833–34. The attempted correction did not involve a mere
clerical error since it imposed an obligation where previously there had been none. Id. 
The trial court is given broad discretion in assessing child support payments. In re
Striegler, 915 S.W.2d 629, 639 (Tex. App.—Amarillo 1996, writ denied). The trial court is
given a number of factors to consider in setting the amount of child support payments. 
Tex. Fam. Code Ann. §§ 154.123, 154.126, 154.128, 154.129 (Vernon 2002).
          Additionally, Terri bears a heavy burden in trying to establish that the error involved
is clerical in nature. The proponent of such a position must provide clear and convincing
evidence the error is clerical in nature and, thus, one for which a clarification order may be
entered. Broussard, 112 S.W.3d at 833; Dryden, 52 S.W.3d at 263–64.
          Terri relies heavily on Dickens to support her contention that this error is clerical in
nature. The divorce decree in Dickens designated Thomas, the respondent, as managing
conservator and Connie, the petitioner, as the possessory conservator. Dickens, 957
S.W.2d at 658. The 1986 decree provided, however, that "respondent pay to petitioner
support in the amount of $50.00 per month per child . . . ." Id. In 1995, Thomas moved
to enforce the child support obligation and sought a clarifying order regarding the order that
"respondent . . . pay to petitioner." Id. The trial court determined the misidentification of
respondent and petitioner in that portion of the 1986 divorce decree awarding child support
a clerical error, entered a clarifying order correctly labeling the parties, and ordered Connie
to pay arrearages. Id.
          In 1996, when Connie still did not pay child support, Thomas again moved for
enforcement. Id. The trial court, this time, concluded that the 1995 clarifying order was
unenforceable because it substantively changed the 1986 divorce decree. Id. On appeal,
Thomas argued that the error in the 1986 decree was a clerical error and, therefore, the
1995 clarifying order was enforceable. Connie argued that the 1995 order constituted a
substantive change of the original decree. Id. at 658–59. However, a letter from Connie's
attorney referred to the "typographical error" in the court's order. Id. at 659. Also, a docket
entry from the judge presiding over the divorce proceedings referred to the parties in their
proper capacities and indicated the trial court had, in fact, ordered Connie, the petitioner,
to pay child support. Id. Further, the rest of the 1986 decree also led the Austin court to
conclude that the error was a clerical one and that the trial court's original judgment
ordered Connie to pay child support to Thomas. Id. at 659–60. The error was simply one
made while reducing the original judgment to writing. 
          We find the error and the facts in Dickens distinguishable from those in the instant
case. While clarifying the erroneous assignment of the titles "petitioner" and "respondent"
in Dickens might appear to impose an obligation where none had previously existed, the
error obviously related only to a mistake in identifying the custodial and noncustodial
parents by their titles in the litigation. The record of the proceedings underlying the
erroneous order clearly contained several indications that reflected the intended and proper
positions of the parties. We find no such evidence in the record before us. 
          The inclusion of the provision as set forth in Section 154.127 of the Family Code
and the calculations which would necessarily follow such an order involve additional judicial
reasoning. Considering the trial court's broad discretion in evaluating factors in setting the
child support obligation, providing that the support would continue in an "amount according
to the child support guidelines" necessarily involves judicial reasoning. Like the omission
of the calculations missing from the judgment in Missouri Pac. Ry. Co., we have before us
an omission that necessarily calls for consideration of evidence and computation, an
omission which a clarification order may not correct. And, like the attempted correction in
Broussard, a clarification order as sought here, one which would support the money
judgment Terri seeks, would impose an obligation where none had previously existed and,
accordingly, would be an impermissible correction of a judicial error after the trial court's
plenary power has expired.



          Here, Terri fails to convince this Court that the omission is simply a clerical one. 
The record before us, which does not contain the now-unavailable court reporter's notes
pertaining to the 1992 decree or the 1996 order, does not demonstrate that the 1996 order
simply failed to record the judgment of the trial court. We have no way to determine
precisely what that judgment was. We do know, however, that the trial court overruled a
motion for new trial, a fact which lends support to the conclusion that the judgment
recorded was the judgment rendered.
          Terri, therefore, has not, and cannot, establish that the omission in the 1996 order
is simply an omission in recording the trial court's judgment. Rather, on these facts, entry
of a clarifying order as Terri requested would impose an obligation to pay a higher amount
of child support where, previously, none had existed, thus constituting an improper
substantive change to the court's orders. The Family Code expressly prohibits the trial
court from entering such an order.
Conclusion 
          We cannot say the error in omitting from the 1996 order a provision for the support
of the younger daughter is merely a clerical error. On the record before us, the error in the
1996 order was judicial in nature and, as such, should have been made the subject of an
appeal from the 1996 order. Because Terri made no such timely appeal, we are now
without jurisdiction to hear her complaint. We overrule Terri's sole point of error and affirm
the trial court's granting of summary judgment in William's favor.



                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      May 12, 2004
Date Decided:         June 9, 2004