**Petition for Writ of Mandamus Conditionally Granted; Appeal Dismissed; and Opinion filed September25, 2012.**



In The

# Fourteenth Court of Appeals

NO. 14-11-00765-CV

**IN RE HEREWEAREAGAIN, INC.; VINCENT CABELLA; THE PREMISES LOCATED AT 2618 WINROCK BLVD., HARRIS COUNTY, HOUSTON, TEXAS; AND VINCENT CABELLA JR.**

ORIGINAL PRCEEDING
WRIT OF MANDAMUS

NO. 14-11-00687-CV

**HEREWEAREAGAIN, INC. AND VINCENT CABELLA, INDIVIDUALLY AND ON BEHALF OF THE PREMISES LOCATED AT 2618 WINROCK BOULEVARD IN THE CITY OF HOUSTON, HARRIS COUNTY, TEXAS, Appellants**

**V.**

**CITY OF HOUSTON, Appellee**

**On Appeal from the 151st District Court**

# O P I N I O N

In this consolidated appeal and petition for a writ of mandamus, we are asked to determine whether the trial court abused its discretion when, in response to the City of Houston's motion to hold a corporation, an individual, and the individual's premises in contempt for violating a permanent injunction, the trial court ordered the alleged contemnors and the corporation's representative to pay the City $47,000 in unrequested sanctions. In addition, the trial court ordered these entities and individuals to (a) install video cameras at their own expense inside the nightclub operated on the premises; (b) make continuous 360-degree video recordings of every part of the building that is accessible to customers, excepting only the bathrooms; and (c) turn over the recordings to the City's designated agent every two weeks. Because the trial court clearly abused its discretion in entering such an order, for which there is no adequate remedy by appeal, we conditionally grant the writ ordering the trial court to vacate the order, and we dismiss the appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2007, a business known as The Penthouse Club was operating in Houston as an adult cabaret without a permit from the City to do so. An adult cabaret is among the sexually oriented businesses defined as an "enterprise" in the Houston Municipal Code, and under the Code, it is "unlawful for any person to own, operate or conduct any business in an enterprise located within the city unless there is a permit for the enterprise." *See* HOUS., TEX., CODE OF ORDINANCES §§ 28-121, 28-122. By local ordinance, a permit may not be issued to an enterprise that is located in a predominantly residential neighborhood or within 1,500 feet of a church or school. *Id.* § 28-125(b). The Penthouse Club was operated on premises in a predominantly residential area and within

1,500 feet of two churches and a school; thus, the City sought both a declaratory judgment that "the Premises" were ineligible for a permit, and a permanent injunction preventing the continued operation of the enterprise. The City's claims for relief were asserted against the Premises *in rem* and against Hereweareagain, Inc., the company that operated The Penthouse Club. The owner of the premises, Vincent Cabella a/k/a Vincent Cabella Sr., was joined as an interested party.

In its final judgment of December 31, 2008, the trial court declared that "the Premises are not eligible for a permit to operate an enterprise, as that term is defined in Section 28-121 of the Code of Ordinances of the City of Houston." The trial court accordingly enjoined Hereweareagain, Cabella, "and the Premises and their respective agents, employees, representatives and all persons acting in concert with any one or more of them . . . from operating or allowing to operate any enterprise at the Premises, as the term 'enterprise' is defined in Section 28-121" of Houston's municipal code.[1]

In August 2010, the City filed a "motion for contempt and to show cause for violation of permanent injunction."[2] The City alleged that it conducted undercover operations at The Penthouse Club on December 2, 2009, on February 27, 2010, and on July 22, 2010, and observed multiple violations of the injunction. The City asked for the trial court to order

(a)    "that respondent Hereweareagain, Inc. be assessed a fine of $500 for the violation of the permanent injunction on December 3, 2009";

(b)    "that any individual agent, employee, representative, or other person acting in concert with Hereweareagain, Inc., Vincent Cabella, and/or the Premises in connection with the violation of the permanent

---

[1] The City further asserted that Hereweareagain and Cabella maintained a common nuisance by knowingly allowing the habitual use of the Premises for prostitution and the delivery of controlled substances. The trial court issued findings of fact agreeing that the Premises were maintained as a common nuisance, and ordered that no business of any kind could be conducted on the Premises from September 10, 2008 through September 10, 2009. In addition, the trial court held Herewearegain, Cabella, and the Premises jointly and severally liable to the City for attorney's fees of $42,000, together with the costs of court.

[2] In the particular proceedings under review here, the City has not alleged that any provisions of the 2008 final judgment were violated except the injunction against the operation of an enterprise on the Premises.

injunction on December 3, 2009, be assessed a fine of $500 and sentenced to confinement in the county jail for six months";

(c) "that the Court exercise its inherent power to compel respondents . . . and all persons acting in concert with anyone or more of them, to obey the permanent injunction. This inherent power can include confinement of any individuals until they comply with the permanent injunction. Tex. Gov't Code § 21.002(e)"; and

(d) "that the Court exercise its inherent power to order Hereweareagain, Inc., Vincent Cabella, and the Premises to be further confined in the Harris County jail by order of the Court until the Court is satisfied that The Penthouse Club will no longer be operated as an enterprise . . . ."

The City also made the following request to the trial court to appoint a receiver to operate The Penthouse Club:

Because of the nature of the business of [T]he Penthouse Club, it should not be necessary to conduct undercover investigations in order to obtain evidence of whether or not the permanent injunction is being violated. Under these special circumstances, where evidence of compliance is within the control of respondents and their respective agents, employees, representatives and all persons acting in concert with anyone or more of them, the City respectfully requests that compliance with the permanent injunction will only be effectively obtained if the Court exercises it[s] inherent power and appoints a receiver to take control of [T]he Penthouse Club so that it is operated in a manner that does not violate the permanent injunction.

Over the course of two days, the trial court held a hearing on the motion for contempt. Cabella's son Vincent Cabella Jr. appeared as the corporate representative of Hereweareagain, Inc.; to distinguish between the father and son, we refer to Vincent Cabella Sr. as "Cabella" and to Vincent Cabella Jr. as "Vincent." Because Cabella was incarcerated, he was not present at the hearing, and the parties agreed that the contempt proceeding against him could not continue in his absence. The trial court accordingly stated, "We will not proceed against Mr. Cabella, Sr."; however, the trial court rejected the argument that, in Cabella's absence, it could not proceed against the Premises, which Cabella owns.

Three months after the hearing, the trial court issued its ruling, and none of the

4

Penthouse Parties was held in contempt. Instead, the trial court issued a "sanctions order," which the trial court stated was rendered "[i]n the exercise of its inherent power to enforce its own orders," namely, the 2008 permanent injunction. In its sanctions order, the trial court required Hereweareagain, Cabella, Vincent, and the Premises (collectively, "the Penthouse Parties") jointly and severally to perform the following actions at their own cost and expense:

(a)     Pay the City $47,000 in accordance with the City's instructions within thirty days.

(b)     Install a closed-circuit video monitoring system at the Premises within sixty days. "Said system shall view, monitor and record a 360[-]degree area in all public areas of the Premises inside in the building" with the exception of bathrooms, the employees' changing areas, and food preparation areas. The cameras were to "be of such quality as to be able to record in full light as well as the dim lighting of the Premises," and "shall record digitally all areas continuously during all times when the Premises is open for business." The recordings were to be stored on DVDs or in a format specified by the City in writing.

(c)     Label the recordings by date and make them available for pickup by the City's designee every two weeks.

In addition, the attorney for the Penthouse Parties was ordered to designate in writing "an individual responsible for securing the recordings and making them available to the City," and provide the written designation to the City's attorney. The Penthouse Parties further were ordered to provide updated information to the City promptly if there was a change in the identity of the person designated to fulfill this responsibility.

Hereweareagain, Cabella, and the Premises filed a motion for new trial and a motion to modify, correct, reform and arrest the sanctions order, but the trial court did not rule on either motion. They filed a notice of appeal, and about a month later, the Penthouse Parties filed a petition for writ of mandamus for relief from the sanctions order. The City then filed a motion asking the trial court to enforce the sanctions order against Hereweareagain, Cabella, and the Premises. The trial court granted the motion and issued an order against each of the Penthouse Parties; they have included a challenge

5

to that order in the issues presented in their appeal.[3]

## II.  ISSUES PRESENTED

In their petition for a writ of mandamus, the Penthouse Parties argue that the trial court abused its discretion by (a) sanctioning them without notice and in violation of their fundamental right to due process, and (b) substantially modifying the final judgment of December 2008 after expiration of its plenary jurisdiction.  In their appellate brief, the Penthouse Parties present the same two arguments, and additionally contend that the trial court abused its discretion by (c) relying upon its inherent power to sanction, (d) awarding the City monetary damages as "sanctions," and (e) sanctioning them based on insufficient evidence.

## III.  ANALYSIS

We review a trial court's imposition of sanctions for abuse of discretion.  *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (per curiam).  We will reverse the sanctions order only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable.  *Id.*  We agree with the Penthouse Parties that the trial court clearly abused its discretion in sanctioning them without notice and an opportunity to be heard.  These errors were particularly apparent in their application to Vincent and Cabella.

Vincent was not a party to the original suit.  He was not named in the permanent injunction in 2008, or even in the City's motion for contempt.  Through counsel, he appeared at the contempt proceedings solely in his capacity as the corporate representative of Hereweareagain, Inc.  With no notice or opportunity to be heard, he was then held jointly and severally liable, in an individual capacity, for $47,000 in monetary

---

[3] "Vincent Cabella Jr." was not named in the notice of appeal, but the following appellants were named: "Hereweareagain, Inc. and Vincent Cabella, individually and on behalf of the Premises Located at 2618 Winrock Boulevard . . . ."  The opening and reply briefs in the appeal ostensibly were filed on behalf of all of the Penthouse Parties.  In light of our discussion below regarding mandamus and the absence of an adequate remedy by appeal, we need not determine whether there was a a bona fide attempt to perfect an appeal as to "Vincent Cabella Jr."  *See Warwick Towers Council of Co-Owners v. Park Warwick, L.P.*, 244 S.W.3d 838, 839–40 (Tex. 2008) (per curiam).

sanctions, together with the costs of installing video cameras, recording all interactions with patrons inside the Premises, and preserving the recordings.

Cabella did not appear at the contempt proceedings in *any* capacity. Moreover, the trial court asked the City's attorney, "[D]o you agree that it's the law that we cannot proceed against Vincent Cabella, Sr., in his individual capacity or not?" The City's attorney answered, "I think we agree with that, Your Honor." The trial court then stated, "All right. Here's my decision. We will not proceed against Mr. Cabella, Sr." Nevertheless, more than three months after announcing this ruling on the record in open court, the trial court held Cabella jointly and severally liable, in an individual capacity, for the sanctions described above.

"Notice is essential for the proper imposition of sanctions." *Zep Mfg. Co. v. Anthony*, 752 S.W.2d 687, 690 (Tex. App.—Houston [1st Dist.] 1988, no writ). Although a trial court has the inherent authority to impose sanctions, and may do so *sua sponte*, the trial court is not permitted to sanction out-of-court conduct without first providing notice and an opportunity to be heard. *See, e.g.*, *Greene v. Young*, 174 S.W.3d 291, 299–300 & n.4 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Shockey v. A.F.P., Inc.*, 905 S.W.2d 629, 630 (Tex. App.—Houston [14th Dist.] 1995, no writ).

Here, the Penthouse Parties received no prior notice that the court was considering sanctioning them, or that such sanctions might include obligations such as those imposed here. They received notice only that, based on the specific violations alleged in the City's motion, the trial court had been asked to fine and confine them for contempt and to appoint a receiver to take control of the Penthouse Club. *See Ex parte Green*, 603 S.W.2d 216, 218 & n.3 (Tex. 1980) (orig. proceeding) ("Where one is required to defend against a motion for contempt, or show cause order, he is entitled to fair notice of the matters alleged against him as the basis of the contempt proceeding.").

The City contends that the Penthouse Parties had adequate notice of the potential sanctions because in its motion, the City asked the district court to "exercise its inherent power . . . to enforce the permanent injunction." But, trial courts have more than one

inherent power. To name just a few, each trial court has the inherent power to (a) manage its docket;[4] (b) dismiss a case for failure to prosecute;[5] (c) render judgment *nunc pro tunc*;[6] (d) determine that a party is a vexatious litigant;[7] (e) determine whether particular activities constitute the unauthorized practice of law;[8] (f) appoint a receiver,[9] and (g) enforce its judgments.[10] In particular, trial courts have the inherent power to enforce their judgments through the use of contempt proceedings.[11] *See Ex parte Gorena*, 595 S.W.2d 841, 843–44 (Tex. 1979) ("[T]he power to punish for contempt is an inherent power of a court. . . . This power enables courts to persuade parties to obey a prior order or decree of the court so that such prior order will not be rendered ineffectual by recalcitrant litigants.").

In the City's motion, the trial court's "inherent power" is mentioned just three times, but never in connection with sanctions. First, the City invoked the trial court's inherent power to coerce the Penthouse Parties into obeying the permanent injunction by holding them in civil contempt of court. Although the City has paraphrased a portion of one sentence from this section to suggest that it asked the trial court to enforce the injunction by using any inherent power it possessed, the City actually wrote as follows:

---

[4] *Villarreal v. San Antonio Truck & Equip.*, 994 S.W.2d 628, 630 (Tex. 1999).

[5] *Id.*

[6] *Collins v. State*, 240 S.W.3d 925, 928 (Tex. Crim. App. 2007).

[7] Although this formerly was described as an inherent power, this power now is authorized by statute. *See* TEX. CIV. PRAC. & REM. CODE §§ 11.001–.104 (West 2002 & Supp. 2012).

[8] *Unauthorized Practice Comm., State Bar of Tex. v. Cortez*, 692 S.W.2d 47, 51 (Tex. 1985).

[9] *Aubin v. Territorial Mortgage Co. of Am., Inc.*, 640 S.W.2d 737 (Tex. App.—Houston [14th Dist.] 1982, no writ) ("Courts of equity have inherent power to appoint receivers independently of statutory authority . . . ." (quoting *Berkshire Petroleum Corp. v. Moore*, 268 S.W. 484, 487 (Tex. Civ. App.—San Antonio 1924, no writ) (op. on denial of reh'g))). This power is now statutory. *See* TEX. CIV. PRAC. & REM. CODE § 64.001(a)(6) (West 2008) ("A court of competent jurisdiction may appoint a receiver . . . in any other case in which a receiver may be appointed under the rules of equity.").

[10] *Arndt v. Farris*, 633 S.W.2d 497, 499 (Tex. 1982) ("The general rule is that every court having jurisdiction to render a judgment has the inherent power to enforce its judgments.").

[11] *Galtex Prop. Investors, Inc. v. City of Galveston*, 113 S.W.3d 922, 927 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (citing *Ex parte Gorena*, 595 S.W.2d 841, 845 & n.2 (Tex. 1979)).

8

*Upon a hearing and a finding that they are in civil contempt of court*, the City moves and prays that the Court exercise its inherent power to compel respondents, and their respective agents, employees, representatives, and all persons acting in concert with anyone or more of them, to obey the permanent injunction. *This inherent power can include confinement of any individuals until they comply with the permanent injunction.* Tex. Gov't Code § 21.002(e).

(emphasis added). Coercive confinement to compel obedience is an example of civil contempt. *See Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex. 1976). The statute cited by the City is called, "Contempt of Court." *See* TEX. GOV'T CODE ANN. § 21.002 (West 2004).

The City referred to the same inherent power a second time when it asked the trial court to "exercise its inherent power to order [Hereweareagain, Cabella,] and the Premises to be further confined in the Harris County jail by order of the Court until the Court is satisfied that The Penthouse Club will no longer be operated as an enterprise." Such coercive confinement would be an exercise of the trial court's contempt powers. *See id.*

The City's only other reference to the trial court's inherent power is its statement, "[T]he City respectfully requests that compliance with the permanent injunction will only be effectively obtained if the Court exercises it[s] inherent power and appoints a receiver to take control of the Penthouse Club so that it is operated in a manner that does not violate the permanent injunction." Nowhere in its motion did the City ask the trial court to impose any sanctions, award the City any compensation, or require the Penthouse Parties to continuously record, preserve, and produce a visual record of "all areas where customers interact in any way with all personnel employed or otherwise working at the Premises."

In sanctioning the Penthouse Parties, the trial court did not grant any relief requested in the City's motion, and did not simply enforce its judgment; it instead imposed additional obligations to punish past violations in ways that it could not do using

9

its contempt powers.[12]  But, the trial court's "inherent power to punish without prior notice and meaningful hearing exists only with respect to 'direct' contempt," that is, to contempt that occurs in the court's presence.  *In re Acceptance Ins. Co.*, 33 S.W.3d 443, 449 (Tex. App.—Fort Worth 2000, no pet.).  "Like contempt proceedings, proceedings for sanctions must comport with due process, affording a party an adequate opportunity to be heard."  *Id.* at 451.  By sanctioning the Penthouse Parties without notice and an opportunity to be heard, the trial court violated their due-process rights and clearly abused its discretion.  *See In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (per curiam) (noting that the right to due process limits a court's power to sanction); *In re Park Mem'l Condo. Ass'n*, 322 S.W.3d 447, 450 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) ("Due process, on a fundamental level, requires notice and a fair opportunity to be heard."); *Kugle v. DaimlerChrysler Corp.*, 88 S.W.3d 355, 361 (Tex. App.—San Antonio 2002, pet. denied) ("A trial court abuses its discretion if it violates due process by imposing sanctions without notice or a meaningful hearing.").

We therefore sustain the Penthouse Parties' first issue.

### IV.  REMEDY

Having concluded that the trial court clearly abused its discretion, we must consider the more difficult question of whether the appropriate avenue of relief lies through mandamus or appeal.  A writ of mandamus is appropriate if the Penthouse Parties have "no adequate remedy by appeal."  *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding).  "An appellate remedy is 'adequate' when any benefits to mandamus review are outweighed by the detriments."  *Id.* at 136.  Moreover, "[m]andamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss,

---

[12] *See, e.g.*, *Cannan v. Green Oaks Apartments*, 758 S.W.2d 753, 754 (Tex. 1988) (per curiam) ("This court has earlier held that in a contempt proceeding a private party cannot recover damages for a violation of a court order.") (citing *Edrington v. Pridham*, 65 Tex. 612, 617 (1886)); *Cadle Co. v. Lobingier*, 50 S.W.3d 662, 668–69 (Tex. App.—Fort Worth 2001, pet. denied) ("A contempt fine is not payable to a private litigant.").

[and] allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments . . . ." *Id.*

The Penthouse Parties argue that they lack an adequate remedy by appeal because the trial court issued its final judgment in December 2008. Thus, they contend that the trial court lacked jurisdiction to render the sanctions order because it had long since lost its plenary power over the case. They additionally reason that if a final judgment was rendered in December 2008, then the sanctions order cannot be a final judgment; hence, it cannot be challenged through an appeal. *See Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 365 (Tex.1985) (orig. proceeding) (per curiam) ("Unless there is a statute specifically authorizing an interlocutory appeal, the Texas appellate courts have jurisdiction only over final judgments.").[13]

It is true that "[o]nly one final judgment shall be rendered in any cause except where it is otherwise specially provided by law," TEX. R. CIV. P. 301, and in this case, a final judgment was rendered in December 2008, when the trial court rendered the permanent injunction. We therefore agree that the sanctions order was not a final and appealable order. We disagree, however, with the Penthouse Parties' contention that the error was jurisdictional. "Trial courts undoubtedly have jurisdiction to modify or vacate their judgments granting permanent injunctions because of changed conditions";[14] thus, to the extent that the trial court's sanctions order can be construed as a modification of the permanent injunction, then it was an order that was within the trial court's jurisdiction. It nevertheless was erroneous, because there have been no allegations, evidence, or findings of changed conditions since the trial court's final judgment four years ago. To the contrary, the trial court specifically found that "the same type of conduct that required entry of the permanent injunction in 2008 is continuing today," and there is "no meaningful distinction between the testimony and documentary evidence" offered at the trial in 2008 and at the contempt hearing in 2011. But, because the

---

[13] This is not a statutorily authorized interlocutory appeal.

[14] *City of Tyler v. St. Louis Sw. Ry. Co. of Tex.*, 405 S.W.2d 330, 333 (Tex. 1966).

sanctions order is not a final, appealable judgment, we conclude that the Penthouse Parties have no adequate remedy by appeal. We therefore conditionally grant the requested writ of mandamus, and dismiss the appeal.

Finally, we note that there has been no ruling on the City's motion for contempt, and the Penthouse Parties have raised meritorious challenges to a number of the trial court's evidentiary and procedural rulings at the contempt hearing. Here, the City asked the trial court to hold Cabella, Hereweareagain, and the Premises in both civil and criminal contempt, but at the contempt hearing, the City dropped its request for criminal-contempt remedies, and all of its charges against Cabella. This left only the City's allegations of constructive civil contempt against Hereweareagain and the Premises, and the only constructive-civil-contempt remedy the City sought through its contempt motion was confinement. As a practical matter, the Premises could not be confined even if it violated the permanent injunction,[15] and its owner—Cabella—could not be confined in the absence of a meaningful opportunity for a hearing without violating his due-process rights. *See In re Reece*, 341 S.W.3d 360, 365 (Tex. 2011) (explaining that one accused of constructive contempt, i.e., violating a court order outside of the court's presence, "is *always* entitled to notice and a hearing in order to defend or explain the charges.") (emphasis added). The trial court also overruled the objections to evidence of conduct that allegedly violated the permanent injunction but that was not mentioned in the City's contempt motion. *But see Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979) ("Due process of law requires that the constructive contemnor be given 'full and complete notification' and a reasonable opportunity to meet the charges by way of defense or explanation.").

Although the proceedings conducted thus far do not support sanctions or contempt findings, our disposition of this case does not foreclose the trial court from rehearing the City's motion to hold Cabella, Hereweareagain, and the Premises in contempt as

---

[15] *But see Estate of Korzekwa v. Prudential Ins. Co. of Am.*, 669 S.W.2d 775, 778 (Tex. App.—San Antonio 1984, no writ) ("An injunction operates *in personam* . . . .").

permitted under section 21.002 of the Texas Government Code.

## V. CONCLUSION

We conclude that the trial court clearly abused its discretion by sanctioning the Penthouse Parties in violation of their due-process rights. We therefore direct the respondent, the Honorable Mike Engelhart, to vacate his sanctions order of May 11, 2011 and any orders enforcing it. We are confident that he will promptly comply, and our writ will issue only if he fails to do so.


/s/    Tracy Christopher
Justice


Panel consists of Justices Boyce, Christopher, and Jamison.

13