**Petition for Writ of Habeas Corpus Denied and Memorandum Opinion filed May 22, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00265-CV

---

### IN RE BELINDA MORALES, Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF HABEAS CORPUS**
**247th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-64486**

---

## MEMORANDUM OPINION

On April 3, 2014, relator Belinda Morales filed a petition for writ of habeas corpus in this court. *See* Tex. Gov't Code § 22.221; *see also* Tex. R. App. P. 52. In the petition, relator asks this court to vacate an order issued by the Honorable Bonnie Crane Hellums, presiding judge of the 247th District Court of Harris County, finding relator in criminal contempt and confining her to the Harris County Jail for 180 days in 48-hour weekend increments. On April 4, 2014, this

court ordered relator released upon the posting of bond, pending a final determination by this court on the petition. *See* Tex. R. App. P. 52.8(b)(3). Having considered relator's claims, we deny her petition for writ of habeas corpus.

## BACKGROUND

Relator Belinda Morales and real party in interest Brooke P. Thompson were divorced in 2013. The 247th District Court signed a final divorce decree, and, as part of that decree, entered mutual injunctions against both Morales and Thompson. As relevant to this original proceeding, the injunction against Morales provided:

> IT IS ORDERED AND DECREED that **BELINDA MORALES** is permanently enjoined from: making disparaging remarks regarding [**THOMPSON**] or [**THOMPSON'S**] family in the presence or within the hearing of the child, or allowing the child to remain in the presence of someone making disparaging remarks regarding [**THOMPSON**] or [**THOMPSON'S**] family.

In January 2014, Thompson filed a motion for enforcement, citing 29 specific instances in which Morales allegedly violated the divorce decree—25 of which concerned Morales purportedly making disparaging remarks, while the other four concerned possession of the parties' children. Thompson sought various forms of relief, including that Morales "be held in contempt, jailed, and fined for each violation alleged above," and that Morales "be confined in the county jail for eighteen months or until [Morales] complies with the order of the Court."

On January 22, 2014, Associate Judge Meca Walker signed an order requiring Morales "to appear and respond to this Motion for Enforcement," and further setting a hearing date on Thompson's motion for February 26, 2014, the

2

purpose of the hearing being "to determine whether the relief requested in this motion should be granted." The evidentiary hearing was held before Judge Hellums, at which multiple witnesses, including Morales, testified, and various exhibits were offered into evidence. After considering the evidence, the trial court found Morales in contempt for having committed two of the disparaging-remarks violations identified by Thompson in his motion. The trial court sentenced Morales to 180 days in jail, to be served on weekends, and ordered her to pay Thompson's attorney's fees.

Morales filed a motion to reconsider sentence or, in the alternative, motion to suspend commitment, which resulted in another hearing before Judge Hellums on March 12, 2014. That hearing was continued briefly to allow Thompson an opportunity to respond to certain legal arguments raised by Morales. At the conclusion of the second day of the hearing, after having heard arguments from counsel and further testimony from Morales, the trial court denied Morales's motion to reconsider or to suspend her commitment. Thereafter, the court entered its contempt order.[1]

In her petition for writ of habeas corpus, Morales presents three issues. In her first issue, Morales argues that the injunctive language in the divorce decree upon which the contempt judgment is based is not sufficiently specific to be enforceable by contempt, because what constitutes a "disparaging remark" is largely in the eye of the beholder. In her second issue, Morales argues that she was

---

[1] The trial court's order is structured as a combined judgment of contempt and order of commitment. *See In re Markowitz*, 25 S.W.3d 1, 3 (Tex. App.—Houston [14th Dist.] 1998, orig. proceeding) (noting contempt judgment and commitment order may be combined in the same document).

not provided notice that criminal contempt was being sought. In her third issue, Morales argues that Chapter 157 of the Texas Family Code, entitled "Enforcement," does not apply to the violations of the injunction at issue, and, therefore, cannot serve as the basis for the trial court's contempt order. Morales requests this court to vacate the trial court's contempt order in its entirety.

## THE HABEAS CORPUS STANDARD

An original habeas corpus proceeding is a collateral attack on a contempt judgment. *Ex parte Merrikh*, 361 S.W.3d 209, 210 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding) (per curiam); *In re Stein*, 331 S.W.3d 538, 540 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding) (per curiam); *see also Ex parte Rohleder*, 424 S.W.2d 891, 892 (Tex. 1967) (orig. proceeding). The purpose of a writ of habeas corpus is not to determine the guilt of the contemnor, but only to determine whether she was afforded due process of law or if the order of contempt was void. *Merrikh*, 361 S.W.3d at 210; *Stein*, 331 S.W.3d at 540; *see also Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979) (orig. proceeding). A court will issue a writ of habeas corpus if the order underlying the contempt is void, or if the contempt order itself is void. *Merrikh*, 361 S.W.3d at 210; *Stein*, 331 S.W.3d at 540; *see also Ex parte Shaffer*, 649 S.W.2d 300, 301–02 (Tex. 1983) (orig. proceeding); *Gordon*, 584 S.W.2d at 688. An order is void if it is beyond the power of the court to enter it, or if it deprives the relator of liberty without due process of law. *Merrikh*, 361 S.W.3d at 210; *Stein*, 331 S.W.3d at 540; *see also In re Henry*, 154 S.W.3d 594, 596 (Tex. 2005) (per curiam) (orig. proceeding). The relator bears the burden of showing her entitlement to relief in a habeas corpus proceeding. *Ex parte Barlow*, 899 S.W.2d 791, 794 (Tex. App.—Houston [14th

Dist.] 1995, orig. proceeding); *see also In re Coppock*, 277 S.W.3d 417, 418 (Tex. 2009) (orig. proceeding).

ANALYSIS

## Alleged Lack of Specificity in the Divorce Injunction

"In order to support a judgment of contempt, Texas law requires that the underlying decree set forth the terms of compliance in clear, specific and unambiguous terms so that the person charged with obeying the decree will readily know exactly what duties and obligations are imposed upon him." *Ex Parte Chambers*, 898 S.W.2d 257, 260 (Tex. 1995) (orig. proceeding); *see also In re Davis*, 305 S.W.3d 326, 330–31 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) (per curiam); *In re Broussard*, 112 S.W.3d 827, 835 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding). "A court order is insufficient to support a judgment of contempt only if its interpretation requires inferences or conclusions which *reasonable* persons might differ." *Chambers*, 898 S.W.2d at 260. "Only the existence of *reasonable* alternative constructions will prevent enforcement of the order." *Id.* "The order need not be full of superfluous terms and specifications adequate to counter any flight or fancy a contemnor may imagine in order to declare it vague." *Id.*

Morales asserts that the injunction in the divorce decree prohibiting her from "making disparaging remarks" is insufficiently specific to support a contempt judgment, relying primarily on the Supreme Court of Texas's decision in *Coppock* and this court's decision in *In re Peebles*, No. 14-10-00973-CV, 2010 WL 4892634 (Tex. App.—Houston [14th Dist.] Dec. 2, 2010, orig. proceeding) (mem.

5

op. per curiam). Neither of these cases provides real support for Morales's position.

In *Coppock*, the supreme court considered a provision of a mediated settlement agreement that was incorporated into the couple's divorce decree, which prohibited both of them from communicating with each other "in a coarse or offensive manner." 277 S.W.3d at 418. The court commented that this provision "is less than clear, as what constitutes 'coarse or offensive' communication, especially between warring spouses, is largely in the eye of the beholder." *Id.* Importantly, however, the court's decision in that case rested not on the lack of specificity of that provision, but on the fact that the trial court's judgment did not contain injunctive language specifically prohibiting coarse or offensive communications. *Id.* at 419. The court concluded that absent the decretal language, the provision at issue was enforceable only as a contractual obligation, which does not include contempt. *Id.* at 420.

At issue in *Peebles* was injunctive language prohibiting the parties from making "derogatory or disparaging remarks"—effectively the same provision Morales challenges in this case. 2010 WL 4892634 at *1, 4. The critical fact about *Peebles* is that this court did not conclude that the prohibition on "derogatory or disparaging remarks" was insufficiently specific to support a contempt judgment; rather, the court concluded that the relator did not violate the injunction. *See id.* at *4 ("Peebles argues that this finding of contempt is not enforceable because neither comment is derogatory or disparaging. We agree. . . . Under these facts, Peebles did not violate the [injunction]."). In reaching the decision, this court noted dictionary definitions of the terms "derogatory" and "disparage," and applied those

6

definitions to two statements. With respect to the first statement, "I hate Kathy," the court concluded that it was merely an expression of an opinion and did not detract from the real party's character and was not deprecation by indirect means. *Id*. As to the second statement, the court concluded that it was made to a dog, and thus not about any person. *Id.*

In considering whether an underlying order is sufficiently specific to support a contempt judgment, our focus is on the language of the order. *See Chambers*, 898 S.W.2d at 260; *Davis*, 305 S.W.3d at 331; *Broussard*, 112 S.W.3d at 835. In a recent decision, the Waco Court of Appeals explicitly held that the very language challenged by Morales in this case is sufficiently specific to support a contempt judgment. *See In re Wallen*, No. 10-11-00206-CV, 2011 WL 2937838, *3 (Tex. App.—Waco July 12, 2011, orig. proceeding) ("We do not find that the standard language contained in the orders is ambiguous so that reasonable persons would find it susceptible to multiple interpretations. We find that the orders are sufficient to support a finding of contempt."). And, neither the *Coppock* court nor the *Peebles* court held to the contrary. Thus, we conclude that Morales has not satisfied her burden to demonstrate that the injunctive language in her divorce decree lacks the requisite specificity to support a contempt judgment. We therefore overrule Morales's first issue.

**Alleged Lack of Notice that Criminal Contempt Would Be Sought**

A contemnor "is entitled to procedural due process throughout the proceedings." *Davis*, 305 S.W.3d at 330. "Contempt may occur in the presence of a court (direct contempt), or outside the court's presence (constructive contempt)." *In re Reece*, 341 S.W.3d 360, 365 (Tex. 2011) (orig. proceeding). When, as in this

case, one is charged with constructive contempt, the contemnor "is always entitled to notice and a hearing in order to defend or explain the charges." *Id.* Specifically, "[d]ue process of law demands that before a court may punish for constructive contempt . . . the accused must be given full and complete notice of the subject matter and of 'when, how, and by what means the defendant has been guilty of the alleged contempt.'" *Broussard*, 112 S.W.3d at 834 (quoting *Ex parte Edgerly*, 441 S.W.2d 514, 516 (Tex. 1969) (orig. proceeding)). "A contempt judgment rendered without proper notification is a nullity." *In re Houston*, 92 S.W.3d 870, 877 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding). Also, "[a] denial of due process occurs when the trial court grants a form of relief that was not requested." *In re Radmacher*, No. 14-08-00346-CV, 2008 WL 2261278, *3 (Tex. App.—Houston [14th Dist.] May 23, 2008, orig. proceeding) (mem. op. per curiam).

Morales argues that she was denied due process because she was not placed on notice that Thompson was seeking criminal contempt, but, rather, was on notice that he was seeking only civil contempt. We disagree. In addition to other forms of relief, Thompson requested that Morales "be held in contempt, jailed, and fined for each violation alleged above," and separately requested that Morales "be held in contempt, jailed, and fined for each failure to comply with the order of the Court from the date of this filing to the date of the hearing on this motion." This quoted language was unconditioned on Morales's future compliance with the injunction. As such, these requests for contempt are "punitive in nature," and thus sought criminal contempt. *Reece*, 341 S.W.3d at 365.

In *Radmacher*, this court considered the same argument as Morales presents with respect to language from a motion for enforcement that read: "Movant

requests that [relator] be held in contempt, jailed for six months, and/or fined $500.00 for each failure to comply with this Court's order from the date of this filing to the date of the hearing on this Motion." 2008 WL 2261278 at *4. In rejecting the relator's argument in that case, this court concluded that such language "is a request for criminal contempt," *id.* at *4, because it sought "unconditional incarceration" in that "if granted, no act of compliance by relator could effect his release," *id*. at *3, 4. We fail to see any material difference between the language in *Radmacher* and that included in Thompson's motion. *Cf. Houston*, 92 S.W.3d at 873, 877 (concluding language in a motion that merely requested the court "find [relator] in contempt of court" failed to provide notice that criminal contempt was sought).

Notwithstanding any other relief Thompson sought in his motion, the language of the motion provided notice to Morales that Thompson was seeking criminal contempt. Thus, Morales was not deprived of due process. We therefore overrule Morales's second issue.

**Application of Chapter 157 of the Texas Family Code**

In her third issue, Morales argues that Chapter 157 of the Texas Family Code, governing enforcement, does not apply to the violations of the injunction at issue, and thus the trial court's imposition of contempt was improper. This argument is misplaced. Although Morales repeatedly suggests in her petition that Thompson's motion was based on Chapter 157, neither Thompson's motion nor the trial court's order ever mentions Chapter 157, nor was Chapter 157 mentioned during any of the hearings on this matter. Indeed, Thompson disavowed reliance

on Chapter 157 in responding to Morales's iteration of this argument before the trial court.

Regardless, Chapter 157 of the Texas Family Code need not apply for the trial court to have authority to find Morales in contempt, because a court has inherent authority to enforce its orders through contempt. *See, e.g.*, *Reece*, 341 S.W.3d at 364 (noting "contempt is a broad and inherent power of a court"); *In re Hereweareagain, Inc.*, 383 S.W.3d 703, 709 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding) ("[T]rial courts have the inherent power to enforce their judgments through the use of contempt proceedings."); *In re Small*, 286 S.W.3d 525, 531 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding) (op. on reh'g) ("A criminal contempt order . . . is an exertion of the court's inherent power to punish the contemnor for a completed act that affronted the court's dignity and authority.").

Morales's focus on arguing the inapplicability of Chapter 157 and its attendant procedures appears to derive from an assertion made before the trial court that Thompson's motion was procedurally defective because it was not verified pursuant to Texas Rule of Civil Procedure 692. To the extent Morales intended to make a similar assertion in this original proceeding, such an assertion must fail because she does not provide in her petition any argument pertaining to Rule 692 and its possible application to this case. *See Coppock*, 277 S.W.3d at 418 ("In a habeas corpus action . . . , the relator bears the burden of showing that the contempt order is void."); Tex. R. App. P. 52.3(h) ("The petition must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the appendix or record.").

Even were this court to reach the merits of the Rule 692 issue, Morales would not be entitled to relief on this ground. Although Thompson's motion for enforcement was unverified, it was followed by an order of the trial court directing Morales to appear at a hearing for the purpose of considering whether the relief requested in the motion should be granted. In a 1953 decision, the Supreme Court of Texas upheld a contempt judgment where an unsworn complaint was followed by a show cause order and a hearing, notwithstanding the language in Rule 692. *See Ex Parte Winfree*, 263 S.W.2d 154, 155, 157–58 (Tex. 1953) (orig. proceeding). In subsequent years, other courts in the state have acknowledged that, following *Winfree*, a motion for enforcement by contempt need not be verified. *See In re Beeler*, 394 S.W.3d 800, 806 (Tex. App.—Beaumont 2013, orig. proceeding); *In re Guerra*, 235 S.W.3d 392, 433 n.202 (Tex. App.—Corpus Christi 2007, orig. proceeding [mand. denied]), *disapproved of on other grounds by In re Blevins*, --- S.W.3d ---, No. 12-0636, 2013 WL 5878910, *3 (Tex. Nov. 1, 2013); *Ex parte Jimenez*, 737 S.W.2d 358, 361 (Tex. App.—San Antonio 1987, orig. proceeding) (en banc) (per curiam); *see also In re Wightman*, No. 05-98-01697-CV, 1998 WL 877494, *3 (Tex. App.—Dallas Dec. 17, 1998, orig. proceeding) (not designated for publication).

Whether Morales's request for relief is based on the inapplicability of Chapter 157 of the Texas Family Code or the lack of a verified motion, she has failed to demonstrate that the trial court's contempt order is void. Accordingly, we overrule Morales's third issue.

## CONCLUSION

Morales has not satisfied her burden to demonstrate entitlement to relief on any of the issues presented. Therefore, her petition for writ of habeas corpus is denied. We revoke the bond set by this court on April 4, 2014, and order Morales remanded to the the custody of the Harris County Sheriff in accordance with the trial court's contempt order.


PER CURIAM

Panel consists of Chief Justice Frost and Justices Donovan and Brown.